# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00887-CV

**William Alexander Roper, Jr., Appellant**

**v.**

**CitiMortgage, Inc., Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
### NO. 2005PC0102, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises out of probate proceedings related to the estate of Michael C. Roper. Michael's brother, William A. Roper, Jr., is a potential heir to Michael's estate.[1] When the appellee, CitiMortgage, Inc., sought to enforce its security interest on a certain piece of real property (the Property) that is part of Michael's estate and to sell the Property, Roper intervened and opposed CitiMortgage's claim against the estate. On cross-motions for summary judgment, the trial court granted CitiMortgage's traditional motion for summary judgment and denied Roper's no-evidence motion for summary judgment on CitiMortgage's claim. The trial court determined that CitiMortgage held a secured claim against Michael's estate and was entitled to judgment against the estate under the Probate Code. The trial court authorized CitiMortgage to sell the Property at public auction to

---

[1] For clarity, we refer to Michael Roper as "Michael" or "Michael Roper" and the appellant as "Roper."

the highest bidder. As part of its order, the trial court also denied Roper's objection to an affidavit submitted by CitiMortgage with its summary-judgment motion.

The dispute at the heart of this appeal is whether CitiMortgage has shown as a matter of law that it has a valid lien against the Property and is thus entitled to foreclose its security interest as provided in the deed of trust and to sell the Property. Roper has not produced evidence refuting CitiMortgage's evidence that payments were not made on the outstanding loan as required by the note and deed of trust after May 1, 2005, or that the loan secured by the deed of trust and the vendor's lien went into default. Instead, in eleven appellate issues, he challenges CitiMortgage's right to bring its claim, the admissibility of its summary-judgment evidence, and the timeliness of service of its summary-judgment motion and evidence. Roper also contends that he established several affirmative defenses against CitiMortgage's claim.

Because we find that CitiMortgage established its claim as a matter of law, we will affirm the trial court's judgment.

**BACKGROUND**

To purchase the Property located at 2655 Candlelight, Canyon Lake, Texas 78133, Michael Roper obtained a $67,200 loan from Milestone Mortgage Corporation.[2] Michael purchased the Property from Michael and Roper's father, William A. Roper (Roper Sr.), and Roper Sr.'s wife,

---

[2] We recognize that Roper disputes most of these facts, as well as the admissibility of CitiMortgage's summary-judgment evidence. We provide this information solely as context for the trial-court proceedings and will decide whether the facts are conclusively established and support summary judgment later in this opinion.

2

Patricia Roper, on October 3, 2002.  On that date, Roper Sr. and Patricia Roper executed a warranty deed with vendor's lien conveying the Property to Michael for consideration that included Michael's execution of a promissory note.  Also on that date, Michael executed the promissory note for the original principal amount of $67,200 and the accompanying security instrument.  The promissory note identifies Milestone Mortgage Corporation as the Lender—the holder of the note and the entity entitled to receive monthly payments in the amount of $402.90.  The note states, "I [Michael Roper, the Borrower] understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"

The security instrument, a deed of trust, secures repayment of the debt evidenced in the note and was recorded in the Official Records of Comal County.  In the deed of trust, Michael granted and conveyed the Property to the trustee (Milestone's president) to hold in trust with power of sale.  The deed of trust names Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary under the security instrument, stating that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  The deed of trust further states:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

3

The note's signature page bears an indorsement signed by Milestone's president (the trustee) stating: "Pay without recourse to the order of Principal Residential Mortgage, Inc." This indorsement transferred Milestone's rights as a holder of the note to Principal Residential. *See* Tex. Bus. & Com. Code § 1.201 (holder is person in possession of negotiable instrument that is payable either to bearer or to identified person that is the person in possession). The note also bears a blank indorsement signed by Principal Residential's executive vice president and chief operating officer stating: "Pay to the order of _____ without recourse." *See id.* § 3.205 (instrument indorsed in blank is payable to bearer and may be negotiated by transfer of possession alone). It is a matter of public record that Principal Residential was succeeded in interest by CitiMortgage through a merger that was effective as of January 1, 2005.[3]

Michael Roper died on March 16, 2005. After May 1, 2005, payments were no longer made as required by the note and deed of trust. Accordingly, the loan secured by the deed of trust

_____

[3] We have the power to take judicial notice of adjudicative facts that are matters of public record sua sponte and for the first time on appeal. *See* Tex. R. Evid. 201(b),(c),(f); *see also, e.g.*, *Office of Pub. Util. Counsel v. Public Util. Comm'n.*, 878 S.W.2d 598, 600 (Tex. 1994) (appellate court has power to take judicial notice for first time on appeal); *Lazarides v. Farris*, 367 S.W.3d 788, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (taking judicial notice of matters of public record sua sponte for first time on appeal). CitiMortgage's acquisition of Principal Residential Mortgage, Inc. is documented in public filings with the Securities and Exchange Commission made by both Principal Financial Group, Inc. (Principal Residential's parent company) and Citigroup Inc. (CitiMortgage's parent company). CitiMortgage acquired Principal Residential on July 1, 2004, and the merger became effective on January 1, 2005. Other courts have recognized both the occurrence of the merger and CitiMortgage's status as successor in interest to Principal Residential. *See, e.g.*, *Manker v. CitiMortgage, Inc.*, No. 2:10-CV-1012-WKW, 2012 WL 999611, at *1 (M.D. Ala. Mar. 23, 2012). The Fifth Circuit noted that "CitiMortgage assumed all of Principal [Residential Mortgage]'s rights, interests, and obligations following its acquisition of Principal, which no longer exists and cannot be sued in its own right." *Burks v. Prudential Ins. Co. of N. Am.*, 388 Fed. Appx. 387, 389 (5th Cir. 2010).

and by the vendor's lien, which was expressly reserved in the deed of trust and the warranty deed conveying the Property from Roper Sr. and Patricia Roper to Michael Roper, went into default. On October 6, 2006, MERS, "as Nominee, as nominee for Lender and Lender[']s Successors and Assigns ('Mortgagee')," presented the Mortgagee's claim against the estate to the estate administrator and the trial-court clerk. *See* Tex. Prob. Code §§ 306 (establishing procedure for handling secured claim for money against estate), 308 (establishing that depositing claim with clerk begins 30-day time period after which claim is presumed to be rejected if not acted on by estate's representative). As required by Section 306 of the Texas Probate Code, MERS specified that the Mortgagee sought "to have the claim allowed, approved, and fixed as a preferred debt and lien against the specific property securing the indebtedness and paid according to the terms of the contract which secured the lien . . . ." *Id.* § 306(a)(2). The estate administrator took no action to either allow or reject the Mortgagee's claim within 30 days after the claim was presented, and therefore, the claim was deemed rejected by operation of law. *See id.* §§ 309 (estate representative shall allow or reject claim within 30 days of presentment), 310 (estate representative's failure to timely allow or reject claim under Section 309 constitutes rejection of claim).

On November 15, 2006, CitiMortgage filed its original petition in the probate proceeding, seeking to first establish and obtain judgment for its Section 306 claim against the estate, *see id.* § 313 (suit on rejected claim must be filed within 90 days of claim rejection), and then to obtain an order authorizing a public sale of the Property, *see id.* §§ 338 (sale of mortgaged property), 341 (application for sale of real estate), 346 (order of sale), 349 (public sales of real estate); Tex. Prop. Code § 51.002 (sale of real property under contract lien). CitiMortgage filed its

original petition "as Mortgage Servicing Agent for [MERS], as Nominee for Lender, its successors and assigns." In this petition, CitiMortgage asserted that it "now held" the deed of trust and the vendor's lien secured by the deed of trust and that it is the beneficiary of the deed of trust. CitiMortgage later filed an amended petition to clarify that it is the current holder of the note and deed of trust (i.e., a successor or assign of the Lender), in addition to being a mortgage servicing agent and servicing the note. In the amended petition, CitiMortgage asserted that it had been the holder of the note and deed of trust at all times relevant to the proceedings. CitiMortgage also asserted that the unpaid principal balance of Michael Roper's indebtedness as of June 30, 2006 was at least $72,553, plus all earned interest, fees, and expenses, which were accruing under the terms of the loan documents.

Roper filed a contest to the claim and counterclaims against the estate administrator, "the unnamed 'mortgagee,'" MERS, and MERS's law firm. Several years of litigation followed. A few events are relevant to this appeal. On June 28, 2007, the trial court accepted the original estate administrator's resignation. On July 25, 2007, the trial court appointed Roper Sr. and Roper's sister, Kimberly Roper Flannery, as co-dependent administrators. On June 1, 2010, the trial court accepted the resignation of Kimberly Roper Flannery as co-administrator.

In September 2011, CitiMortgage filed its Second Motion for Summary Judgment. Two days later, Roper filed both an intervention and original answer to CitiMortgage's amended petition and a no-evidence summary-judgment motion. Between September 22, 2011 and September 27, 2011, Roper also filed two separate objections to the affidavit and attached documents that CitiMortgage submitted with its summary-judgment motion, an opposition to

6

CitiMortgage's summary-judgment motion with an attached affidavit and documents, a motion for continuance, and a document entitled "Objections to Hearing, CitiMortgage Second SJ Motion and Nixon Affidavit." On September 27, 2011, CitiMortgage filed a motion for continuance on Roper's no-evidence summary-judgment motion. On September 29, 2011, at a hearing on CitiMortgage's motion to retain and its summary-judgment motion, the trial court determined that it would not hear oral argument on the summary-judgment motions and instead would take the motions for determination on submission. In October 2011, CitiMortgage filed a response to Roper's no-evidence summary-judgment motion, and Roper filed a reply and two additional memorandums of law in support of his reply. The trial court signed its order granting CitiMortgage's motion and denying Roper's motion on December 1, 2011. This appeal followed.

## THE PARTIES' SUMMARY-JUDGMENT MOTIONS

### Standard of review

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court grants one motion and denies the other, we consider both sides' summary-judgment evidence and determine all questions presented. *Id.* If we determine that the trial court erred, we may render the judgment that the trial court should have rendered. *Id.* If we determine that a fact issue precludes summary judgment for either party, we remand the claim for trial. *See University of Tex. Health Sci. Ctr. v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987) (per curiam).

7

When reviewing a grant of a traditional summary-judgment motion, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence*, 164 S.W.3d at 661. Summary judgment is proper when the evidence shows that there are no genuine disputed issues of material fact and the movant is entitled to judgment as a matter of law.[4] Tex. R. Civ. P. 166a(c).

A movant, like Roper, who seeks a no-evidence summary judgment against another party's claim, must allege that there is no evidence of one or more essential elements of the claim on which the adverse party would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). Although the movant is not required to produce proof in support of its no-evidence claim, the motion must specifically state the elements for which the nonmovant lacks evidence. *See Timpte Indus. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged elements to preclude summary judgment. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.*

---

[4] Not all factual disputes preclude summary judgment. A factual dispute precludes summary judgment only when the disputed issue is a "genuine" issue of "material" fact. *See, e.g.*, *Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 11-12 (Tex. App.—Fort Worth 2002, no pet.). A fact is "material" only if it affects the ultimate outcome of the suit under the governing law, and a material fact issue is "genuine" only if a reasonable jury could resolve the fact issue in favor of the nonmovant. *Id.* "If the evidence simply shows that some metaphysical doubt as to the fact exists, or if the evidence is not significantly probative, the material fact issue is not 'genuine.'" *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

**CitiMortgage's traditional summary-judgment motion**

CitiMortgage prevailed on its traditional summary-judgment motion. In that motion, CitiMortgage asserted that it is entitled to an order establishing its claim as a preferred debt and lien against the Property. *See* Tex. Prob. Code §§ 306(a)(2), 313. Section 306(a)(2) of the Probate Code provides that if the claimant seeks to have the claim established as a preferred debt and lien against the specific property securing the indebtedness and paid according to the contract terms that secured the lien, then the claim shall be allowed and approved if it is a valid lien. In addition, the estate's representative may pay a preferred debt and lien claim before maturity if it is in the estate's best interest to do so. *Id.* § 306(a)(2). Section 306(e) provides that if the property securing a preferred debt and lien claim has not been sold or distributed within six months from the date letters are granted, then the estate representative shall pay all maturities that have accrued on the debt and perform all terms of the contract securing the debt. *Id.* § 306(e). If the estate representative defaults on payment or performance, upon application of the claimholder, "the court shall . . . require the sale of the property free of the lien and apply the proceeds to the payment of the whole debt." *Id.* § 306(e)(2).

In its motion, CitiMortgage also asserted that it is entitled to an order authorizing the Property's sale under Probate Code Section 338. Section 338 permits a creditor holding a claim secured by a valid mortgage or other lien that has been established by suit to apply for and obtain a court order to sell the property secured by the lien to satisfy his claim.[5] Unless the court determines

---

[5] CitiMortgage also relied on Sections 341, 346, and 349 of the Probate Code and Section 51.002 of the Property Code when requesting an order authorizing a public sale of the Property. *See* Tex. Prob. Code §§ 341 (allowing application for sale of real estate when necessary to pay claim or

that the lien should be refinanced or discharged out of the estate's general assets, or the estate's representative shows cause for denying the application, the court "shall grant the application and order that the property be sold at public or private sale, as deemed best, as in ordinary cases of sales of real estate." *Id.* § 338. Section 338 has been described as being "more in the nature of a foreclosure judgment than merely a writ of execution" because it requires the probate court to exercise some judicial discretion and determine the estate's best interest as weighed against the creditor's rights. *Vineyard v. Irvin*, 855 S.W.2d 208, 210 (Tex. App.—Corpus Christi 1993, no writ).

Under Section 306(a)(2), to show its entitlement to summary judgment establishing its claim as a preferred debt and lien, CitiMortgage needed to demonstrate only that it had a valid lien against the Property. After establishing its valid lien against the Property, to show its entitlement to summary judgment ordering a sale of the Property under Section 338, CitiMortgage needed to demonstrate the amount of the debt owed to it by the estate so that the probate court could determine whether it was in the estate's best interest to order the Property's sale. To support its claim, CitiMortgage attached to its motion the affidavit of Cassie Nixon, an authorized representative of and custodian of records for CitiMortgage, and authenticated copies of the warranty deed with vendor's lien, deed of trust, and note that were executed when Michael Roper purchased the property. CitiMortgage argued that this evidence established that (1) the warranty deed had contained a vendor's

---

in estate's best interest), 346 (empowering court to order sale of estate's property when court is satisfied sale is necessary or advisable and setting forth provisions that must be included in order), 349 (establishing requirements for public sales of real estate); *see also* Tex. Prop. Code § 51.002 (establishing requirements for property sale conducted under power of sale conferred by deed of trust or other contract lien).

lien, (2) the loan went into default after Michael's death, and (3) CitiMortgage, the lawful holder and owner of the note, took all necessary steps to establish its claim and enforce its lien.

Roper opposed CitiMortgage's motion and objected to Nixon's affidavit. He asserted that Nixon's affidavit is inadmissible because (1) Nixon had not been properly and timely identified as a fact witness in response to Roper's requests for disclosure and interrogatories; (2) CitiMortgage served the affidavit by certified mail less than 24 days before the September 22 hearing requested and scheduled by CitiMortgage; (3) the affidavit contains false statements, is vague, is not based on personal knowledge, makes factual representations Nixon is unqualified to make, and contains hearsay, conclusory statements, and legal conclusions. In addition, Roper disputed the truth of a number of averments in Nixon's affidavit, as well as other facts and allegations asserted by CitiMortgage in its petition and other filings. Roper also argued that material fact issues exist on his affirmative defenses to CitiMortgage's claim. The general thrust of Roper's argument is that MERS presented the original claim in October 2006, and CitiMortgage cannot adequately show that the claim belongs to it. In support, Roper argued that CitiMortgage: (1) lacks standing to sue on the claim; (2) lacks capacity to sue; (3) suffers from a variety of limitations and improper-service issues related to its claim; and (4) failed to satisfy conditions precedent to establishing its claim. In addition, he argued that the original claim brought by MERS was properly rejected.

**Roper's no-evidence summary-judgment motion**

Roper also filed a no-evidence summary-judgment motion. In his motion, he identified elements of a claim for collecting on a promissory note that he asserted CitiMortgage lacks evidence

11

to support.[6]  In particular, he asserted that CitiMortgage had no evidence of (1) a valid note, (2) a valid signature, (3) a valid deed of trust, (4) a valid warranty deed with a vendor's lien, (5) a valid agency relationship between MERS and CitiMortgage or MERS and Milestone Mortgage Corporation, (6) MERS being a servicer or acting as a servicer, (7) an assignment of the deed of trust from Milestone to CitiMortgage, (8) a default or amount alleged to be owed, (9) the method of calculation of economic damages, and (10) the amount of attorneys' fees or a contract for attorneys' fees at the date of the claim.  Roper also reiterated arguments made in his opposition to CitiMortgage's motion.  He included more detailed arguments that CitiMortgage lacks standing to sue on its claim and lacks capacity to sue.  He included the identical arguments on CitiMortgage's alleged limitations and improper-service issues and on CitiMortgage's alleged failure to satisfy conditions precedent that he had included in his opposition to CitiMortgage's motion.  He also contended that the issue to be decided was whether the claim—which again he characterizes as MERS's claim, not CitiMortgage's—was properly rejected by the estate administrator, and he provided a number of reasons that he asserted were sufficient to support the claim's rejection.

**The parties' summary-judgment burdens**

As noted above, to establish its claim as a preferred debt and lien and secure an order for sale of the Property, CitiMortgage needed to prove that it had a valid lien and the amount of debt secured by that lien.  CitiMortgage sought to foreclose its lien under Probate Code provisions

---

[6] To recover on a promissory note, the plaintiff must prove:  (1) the note in question, (2) the party sued signed the note, (3) the plaintiff is the owner or holder of the note, and (4) a certain balance is due and owing on the note.  *Starcrest Trust v. Berry*, 926 S.W.2d 343, 350 (Tex. App.—Austin 1996, no writ).

allowing it to apply to the probate court for an order authorizing it to sell the Property. In Roper's

no-evidence summary-judgment, he challenged CitiMortgage's ability to prove the elements of a

claim for recovery on a promissory note, a different claim from the one asserted by CitiMortgage.

Under Texas law, foreclosure on a lien and enforcement of a note are distinct remedies on separate

obligations. *See Stephens v. LPP Mortg., Ltd.*, 316 S.W.3d 742, 747 (Tex. App.—Austin 2010, pet.

denied) ("When a debt is memorialized by a note that is secured by a lien, the note and the lien

constitute separate obligations."). As one court explains it:

> Foreclosure enforces the deed of trust, not the underlying note. Foreclosure is an
> independent action against the collateral and may be conducted without judicial
> supervision. Enforcement of the note, on the other hand, is a personal action against
> the signatory and requires a judicial proceeding. Furthermore, Texas courts have
> refused to conflate foreclosure with enforcement of a promissory note. . . . "Where
> there is a debt secured by a note, which is, in turn, secured by a lien, the lien and the
> note constitute *separate obligations*." The right to recover on the note and the right
> to foreclose are severable and may be enforced separately.

*Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July

25, 2011) (internal citations omitted).

  Although Roper challenged the elements of a different claim than the one asserted

by CitiMortgage, he did contest elements bearing upon CitiMortgage's claim in his motion and

his opposition to CitiMortgage's motion. Specifically, he challenged whether CitiMortgage is the

owner and holder of the deed of trust, whether it was the owner and holder at the time the claim was

filed, and whether CitiMortgage had the right to enforce the lien against the Property. Accordingly,

we will liberally construe his appellate arguments and consider both sides' summary-judgment

evidence. Similarly, we note that Roper improperly asserted many affirmative defenses in his

no-evidence summary-judgment motion, but because he also made the same or similar arguments in his opposition to CitiMortgage's traditional summary-judgment motion, we will consider whether any of those challenges that he reasserts on appeal raised a material fact issue sufficient to preclude summary judgment for CitiMortgage.

## ANALYSIS

On appeal, Roper challenges the trial court's grant of summary judgment in CitiMortgage's favor in eleven issues. Roper appeals CitiMortgage's capacity to bring its claim, the admissibility of its summary-judgment evidence, and the timing of the trial court's consideration of CitiMortgage's summary-judgment motion and supporting evidence. Roper also asserts that he raised fact issues that preclude summary judgment for CitiMortgage related to CitiMortgage's failure to satisfy conditions precedent, its failure to properly serve successor co-administrators with scire facias, limitations, and prior discharge of the debt. In addition, he raises a procedural complaint about the effect of the judgment on a discharged estate administrator. Finally, Roper broadly asserts that the trial court erred by granting summary judgment for CitiMortgage and by denying his no-evidence summary-judgment motion for all the reasons set forth in his summary-judgment briefing in the trial court and in his first eight issues on appeal. We begin by discussing the roles of the parties to the loan transaction to provide a foundation for our discussion of the various issues presented by Roper, and then we address each of his remaining issues in turn.

**Roles of parties to loan**

Several of the issues raised by Roper in the trial court and reasserted on appeal stem from his contention that the claim presented in October 2006 belonged to MERS, not CitiMortgage.

14

Roper fundamentally misunderstands MERS's and CitiMortgage's roles in relation to the loan. Some of Roper's confusion may arise from the fact that the Texas Legislature has broadly defined "mortgagee" to include a "book entry system" like MERS in the chapter of the Property Code concerning liens. *See* Tex. Prop. Code § 51.0001.[7] MERS is a recognized book entry system. *Campbell v. Mortgage Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *4 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.). MERS is an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in and servicing rights to mortgage loans. *See In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (J.P.M.L. 2009). When, as here, the deed of trust names MERS as the nominee for the lender and its successors and assigns and the deed of trust is recorded in the local real-property records with MERS as the named beneficiary, MERS remains the mortgagee of record if the note is transferred between MERS members, and there is no requirement that the deed of trust be re-recorded each time it is transferred.[8] *See Knighton v. Merscorp, Inc.*, 304 F. App'x 285, 286 (5th Cir. 2008) (explaining that using MERS as permanent record mortgagee allows MERS members to buy and sell rights to mortgage loans without any changes to public land records); *Campbell*, 2012 WL 1839357, at *4. When CitiMortgage acquired the note and deed of trust through its merger with Principal Residential

---

[7] "'Book entry system' means a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." Tex. Prop. Code § 51.0001(1). "'Mortgagee' means: (A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *Id.* § 51.0001(4).

[8] "Nominee" means "[a] person designated to act in place of another" and "[a] party who holds bare legal title for the benefit of others." Black's Law Dictionary 1149 (9th ed. 2009).

15

Mortgage that became effective January 1, 2005, MERS became the nominee for CitiMortgage, and there was no requirement that the deed of trust be re-recorded at that time. *See Reinagel v. Deutsche Bank Nat'l Trust Co.*, No. 12-50569, 2013 WL 5832812, ___ F.3d ___, at *4 n.27 (5th Cir. Oct. 29, 2013) (op. on reh'g); *Campbell*, 2012 WL 1839357, at *4.

Roper submitted an assignment of the deed of trust from MERS to CitiMortgage that was executed June 22, 2011 and recorded in the Comal County Official Public Records on July 1, 2011 as part of the evidence attached to the affidavit he submitted with his opposition to CitiMortgage's summary-judgment motion. Roper makes several assertions about what he calls the "belated assignment." To the extent that Roper argues that until MERS assigned the deed of trust to CitiMortgage, MERS held the note on the Property, CitiMortgage could not have been the holder of the note, or CitiMortgage was MERS's agent, and thus the claim belonged to MERS, not CitiMortgage, these arguments fail. The deed of trust clearly established MERS's role as nominee for the original lender *and its successors* and assigns, which includes CitiMortgage. The deed of trust also gave MERS the authority to transfer the rights and interests in the deed of trust to CitiMortgage. The mortgage documents provided for the use of MERS. MERS's actions in this transaction were consistent with the rights provided to it by the deed of trust.

Furthermore, MERS's transfer of the rights and interests in the deed of trust to CitiMortgage by assignment in no way changes the fact that when CitiMortgage became a successor to the original lender Milestone, CitiMortgage held the express vendor's lien as well as the deed of trust. The warranty deed with vendor's lien conveyed the Property from Roper Sr. and Patricia Roper to Michael Roper for consideration that included Michael's execution of the promissory note

16

payable to Milestone (the Mortgagee).  The warranty deed also established that the promissory note was "secured by Vendor's Lien and superior title retained herein in favor of said Mortgagee, and . . . also secured by a Deed of Trust" from Michael Roper to Milestone.  The warranty deed further states:  "It is expressly agreed that the Vendor's Lien is retained in favor of the payee of said Note against the above-described property, premises and improvements, until said Note and all interest thereon shall have been fully paid according to the terms thereof, when this deed shall become absolute."  This language is sufficient to create a valid vendor's lien.  *See Walton v. First Nat'l Bank of Trenton, Trenton, Tex.*, 956 S.W.2d 647, 651 (Tex. App.—Texarkana 1997, pet. denied).

With this understanding of the various parties' roles in the transaction, we turn to our discussion of the issues raised by Roper on appeal.

**Capacity**

In his sixth issue, Roper argues that the trial court erred by denying his no-evidence summary-judgment motion and granting CitiMortgage's motion because he asserted in his no-evidence motion that CitiMortgage lacked capacity to bring its suit.  As we understand his argument, Roper asserts that because MERS, who filed the claim as nominee for the lender and its successors and assigns, is an allegedly unregistered foreign entity and because CitiMortgage "originally brought suit in a *representative capacity* as the 'mortgage servicing agent' for claimant MERS," CitiMortgage lacked capacity to bring its suit.  He further asserts that CitiMortgage did not cure its lack of capacity by amending its petition "to alter both the identity of the plaintiff as well as its cause of action, substituting itself as plaintiff, purporting that the MERS Claim was actually a CitiMortgage claim."

17

MERS filed the claim in October 2006 "as Nominee, as nominee for Lender and Lender[']s Successors and Assigns ('Mortgagee')." As discussed above, CitiMortgage, as the successor in interest to Principal Residential, was the Mortgagee (i.e., the lending bank to whom payments were owed) when MERS filed the claim on its behalf. After the claim was rejected by operation of law, CitiMortgage filed its original petition "as Mortgage Servicing Agent for [MERS], as Nominee for Lender, its successors and assigns." CitiMortgage later filed an amended petition to clarify that although its original description was technically correct because it is a mortgage-servicing agent and MERS was acting as nominee for the lender or its successors and assigns, CitiMortgage could have also described itself as the current holder of the note and deed of trust because it is the current holder and had been the holder at all times relevant to the proceedings.

MERS's filing of the claim on CitiMortgage's behalf and CitiMortgage's original description of itself as a mortgage servicing agent and its later clarification of itself as the current holder of the note and deed of trust (i.e., the Mortgagee identified in the claim that MERS presented on its behalf) do not in any way diminish CitiMortgage's capacity to bring its claim against the estate. Capacity means the legal authority to pursue a claim. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). Roper contends that MERS is an unregistered foreign entity, and as such, may not maintain a court proceeding in Texas that is either brought directly by the entity or as a derivative action in the entity's name. *See* Tex. Bus. Orgs. Code § 9.051. This action was neither brought directly by MERS in its own name nor as a derivative action in its own name. The deed specifically provided MERS, as nominee for the lender and the lender's successors and assigns, with the right to exercise any and all of the interests granted by Michael Roper, including the

18

right to foreclose and sell the Property. MERS brought the claim on behalf of the Mortgagee (CitiMortgage), not on its own behalf, and therefore, its registration status is irrelevant.[9] We overrule Roper's sixth issue.

**Admissibility of CitiMortgage's evidence**

In his first and fourth issues, Roper argues that the trial court should not have admitted Nixon's affidavit and the attached exhibits or relied on her statements in the affidavit because (1) CitiMortgage did not timely disclose Nixon as a fact witness in response to his discovery requests and it withheld the documents attached to her affidavit from production; (2) Nixon lacked personal knowledge of the transactions and demonstrated no basis for her knowledge of the records' origin or manner of preparation, rendering her statements within the affidavit inadmissible hearsay; and (3) Nixon made impermissible conclusory statements and reached legal conclusions about Michael Roper's indebtedness, the default in payment, and CitiMortgage's status as holder and owner. We review the trial court's rulings on the admissibility of summary-judgment evidence under an abuse-of-discretion standard. *Fairfield Fin. Group, Inc. v. Synnott*, 300 S.W.3d 316, 319 (Tex. App.—Austin 2009, no pet.); *see also Cunningham v. Columbia/St. David's Healthcare Sys., L.P.*, 185 S.W.3d 7, 13 (Tex. App.—Austin 2005, no pet.) (applying abuse-of-discretion standard

_____

[9] To the extent Roper argues in his reply brief that CitiMortgage is MERS's agent based on its original description of itself as a mortgage servicing agent and therefore cannot sue on MERS's behalf, we note that CitiMortgage stated in its original petition that it held the deed of trust and the vendor's lien and that it sought to enforce its vendor's lien. It also corrected its description in its amended petition to identify itself as both the mortgage servicing agent and the holder of the note and deed of trust. As the successor in interest to Principal Residential, the enforcement claim belonged to CitiMortgage, not MERS, although the deed of trust allowed MERS to initiate and exercise the rights granted in the deed on behalf of CitiMortgage.

19

to court's decision to exclude evidence under Texas Rule of Civil Procedure 193.6). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam). We must uphold the trial court's ruling if there is any legitimate basis for it. *Owens-Corning*, 972 S.W.2d at 43.

### *Timeliness of CitiMortgage's disclosure of Nixon and documents*

We first consider Roper's argument that the trial court should have excluded Nixon's affidavit and its attachments on the grounds that CitiMortgage did not timely disclose Nixon as a fact witness and it withheld the documents from production. Roper contends that under Texas Rule of Civil Procedure 193.6, the trial court was required to automatically exclude Nixon's testimony and the documents. Under Rule 193.6, exclusion of evidence that is not timely disclosed or testimony of a non-party witness who was not timely identified is mandatory absent a showing of (1) good cause or (2) lack of unfair surprise or unfair prejudice. The burden of establishing good cause or lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. Tex. R. Civ. P. 193.6(b). A finding of good cause or lack of unfair surprise or unfair prejudice must be supported by the record. *Id.* In this case, the trial court denied Roper's objection, but the judgment did not state the grounds upon which the objection was denied. We must uphold a trial court's ruling on any legal theory on which it could have properly relied. *See Guaranty Cnty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam). The trial court has discretion to determine whether the offering party has met its burden of showing good cause to admit evidence

20

that was not timely identified. *See Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992) (applying former Rule 215(5), Rule 193.6's predecessor).

The record on appeal reflects that the documents attached to Nixon's affidavit had been provided to Roper and on file with the trial court since CitiMortgage filed its amended motion for summary judgment in August 2008—three years before CitiMortgage filed its second summary-judgment motion and the affidavit at issue here. Because the record conclusively shows that Roper had been provided with the documents, the trial court did not abuse its discretion by refusing to exclude them under Rule 193.6. In addition, the substance of Nixon's affidavit, which authenticates CitiMortgage's business records and recites facts related to the payment history and origination of the loan, is substantively identical to the affidavit of the prior records custodian that CitiMortgage submitted three years before. Based on the record before us, we conclude that the trial court did not abuse its discretion by concluding that the change in the identity of CitiMortgage's records custodian did not unfairly surprise or prejudice Roper. We overrule Roper's first issue.

### *Nixon's personal knowledge and authentication of CitiMortgage's records*

We now turn to Roper's argument that the trial court should have excluded Nixon's affidavit testimony as inadmissible hearsay because she lacked personal knowledge of the transactions. Roper contends that Nixon's statement that she had "reviewed the records relating to this matter, including the payment history and loan origination documents" failed to establish that she had personal knowledge of "the activities of CitiMortgage in relation to Michael C. Roper's loan" and thus her conclusions were hearsay or based on hearsay.

21

An affiant must swear that the facts presented in the affidavit reflect her personal knowledge for the affidavit to have probative value. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004) (per curiam). Nixon stated in her affidavit that she was "an authorized representative who has the authority to make this Affidavit on behalf of Citi[M]ortgage" and "a custodian of records for Citimortgage in regards to the subject loan." She also stated that she had personal knowledge of the facts stated in the affidavit and that they were true and correct. She further attested that the documents were obtained and kept in the regular course of business, as required by the Texas Rules of Evidence to except them from the hearsay rule. *See* Tex. R. Evid. 803(6) (excepting business records from hearsay rule), 902(10) (establishing requirements for records custodian's affidavit sufficient to render business records self-authenticated).

Nixon's acknowledgment of the sources from which she gathered her knowledge, in this case CitiMortgage's records relating to Michael Roper's loan, does not violate the personal-knowledge requirement. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 224. The rules of evidence do not require that the qualified witness who lays the predicate for the admission of business records be their creator, be an employee of the same company as the creator, or have personal knowledge of the contents of the record—personal knowledge of how the documents were prepared will suffice. *See* Tex. R. Evid. 803(6), 902(10); *see also In re E.A.K.,* 192 S.W.3d 133, 142 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding no abuse of discretion to admit document attested to as business record by state agency's employee when document was prepared by third-party contractor documenting study conducted on behalf of state agency). Nixon's averments

22

that she is an authorized representative of and records custodian for CitiMortgage and that CitiMortgage kept these records in the regular course of its business satisfy this requirement.

Roper further asserts that Nixon cannot authenticate records that she represents to be those of CitiMortgage's predecessor without showing a basis for her knowledge of their origin or manner of preparation. *See* Tex. R. Evid. 803(6). The documents attached to Nixon's affidavit that she attested were business records of CitiMortgage were (1) the warranty deed with vendor's lien, (2) the deed of trust, and (3) the note. Both the warranty deed with vendor's lien and the deed of trust are notarized and contain file stamps that indicate that they have been filed in the Comal County real property records by the county clerk as official public records. Therefore, these documents are self-authenticated. *See* Tex. R. Evid. 902(8) (allowing self-authentication of documents acknowledged by notary public), (4) (allowing self-authentication of certified copies of public records); *Murphy v. Countrywide Home Loans, Inc.*, 199 S.W.3d 441, 446 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding file stamps indicating filing in county real property records sufficient for self-authentication). The only other document at issue is the note.

The promissory note identified Milestone Mortgage Corporation as the Lender—the holder of the note and the entity entitled to receive payments. The note states that "[t]he Lender or anyone who takes this note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" The note bears an indorsement by Milestone Mortgage Corporation to Principal Residential Mortgage, Inc., which transferred Milestone's rights as a holder in due course to Principal Residential. Principal Residential was later succeeded in interest by CitiMortgage when CitiMortgage merged with Principal Residential. Although CitiMortgage was not the original

23

author or creator of the note, the note nevertheless may be self-authenticated as CitiMortgage's business record if (1) the document is incorporated and kept in the course of CitiMortgage's business, (2) CitiMortgage typically relies upon the accuracy of the document's contents, and (3) the circumstances otherwise indicate the document's trustworthiness. *See, e.g.*, *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240-41 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also* Tex. R. Evid. 803(6), 902(10).

The note satisfies these three criteria. Nixon attested that CitiMortgage had obtained and kept these documents in the regular course of its business and that they are essential and required to properly administer and service the loan file. Nixon further stated that she is a records custodian for CitiMortgage for Michael Roper's loan and has personal knowledge of the records related to the loan, including the payment history and loan origination documents. These statements sufficiently show that CitiMortgage incorporated the records related to Michael Roper's loan after the merger with Principal Residential. *See id.* at 241-42. These statements, along with Nixon's statements that payments have not been made in accordance with the note and deed of trust and that the indebtedness continues to remain unpaid, also show that CitiMortgage relied on the accuracy of the note (and other documents received from Principal Residential) to determine the existence and value of the debt now due to CitiMortgage. *See id.* at 242-43. As for the trustworthiness of the third-party document, the note at issue here was signed and each page initialed by Michael Roper on the same date that he signed the notarized deed of trust and that Roper Sr. and Patricia Roper executed the warranty deed, which conveyed the property to Michael, subject to Milestone's vendor's lien. Both the deed of trust and the warranty deed refer to the note as evidencing Michael Roper's debt to Milestone. All of

these documents are part of the same loan transaction. *See Braniff Inv. Co. v. Robertson*, 81 S.W.2d 45, 50 (Tex. 1935); *Robinson v. Saxon Mortg. Servs., Inc.*, 240 S.W.3d 311, 313-14 (Tex. App.—Austin 2007, no pet.). Thus, the note possesses a high degree of trustworthiness because it was executed as part of the same transaction as the other public-record documents.

Our primary concern with the admission of third-party business records is their reliability. *Simien*, 321 S.W.3d at 245. Personal knowledge of the recordkeeping practices of the third party is not required. *Id.* at 244. Roper has not attacked the reliability of the records themselves; instead, he contends that Nixon's affidavit lacks trustworthiness because her affidavit contains inaccurate statements and any CitiMortgage witness is inherently untrustworthy. He does not, however, expressly assert that the note itself and the other documents or the method or circumstances of their preparation are not trustworthy. *See* Tex. R. Evid. 803(6). CitiMortgage presented evidence to the trial court that satisfies the three-factor test for admission of business records. Consequently, the trial court did not abuse its discretion by admitting the original loan documents as CitiMortgage records under the business-records exception to the hearsay rule. *See Simien*, 321 S.W.3d at 245.

### *Nixon's conclusions based on the documents*

Roper further argues that the trial court should not have admitted Nixon's statements related to the unpaid indebtedness and CitiMortgage's status as the lawful holder or owner of the note, the deed of trust, and the vendor's lien because these statements are impermissibly conclusory. Logical conclusions based on stated underlying facts are proper in both lay and expert testimony, but conclusory statements are not proper as summary-judgment proof if there are not facts to support the conclusions. *See Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997,

25

no writ). Conclusory statements are not readily susceptible to being controverted. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) (citing Tex. R. Civ. P. 166a(c)). Nixon's testimony, which was based on her personal knowledge as records custodian, in which she identified the note and deed of trust and recited the payoff due as of September 5, 2008, is not conclusory and suffices to support summary judgment. *See American 10-Minute Oil Change, Inc. v. Metropolitan Nat'l Bank-Farmers Branch*, 783 S.W.2d 598, 601 (Tex. App.—Dallas 1989, no writ) (summary-judgment affidavit made on bank vice-president's personal knowledge, which identified note, principal balance, and interest owed after allowing for all offsets, payments, and credits, was not conclusory); *see also Texas Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517 (Tex. 1999) (citing *American 10-Minute Oil Change* and allowing affidavit testimony of total amount due under written instrument to support award of that amount in default-judgment proceeding).

To the extent that Nixon's statements that "CitiMortgage is the lawful holder or owner of the Note and Deed of Trust" and "also the holder or owner of the express Vendor's Lien reserved in the body of the Deed and Deed of Trust" explain the content of the attached documents, they are not conclusory statements. *See Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 512 (Tex. App.—El Paso 2010, no pet.). But even if we assume without deciding that these statements are legal conclusions, the trial court would not have been required to strike the entire affidavit. *See Ennis v. Loiseau*, 164 S.W.3d 698, 703-04 (Tex. App.—Austin 2005, no pet.) (upholding trial court's exclusion of only conclusory portions of special-appearance affidavit). Without relying on Nixon's statements, the trial court could have determined by reference to the documents themselves, which we have already concluded were properly admitted, that CitiMortgage is the lawful owner and holder of the note, deed of trust, and vendor's lien. *See*

*Rockwall Commons*, 331 S.W.3d at 514. Thus, the trial court's failure to exclude Nixon's statements about CitiMortgage's status as an owner or holder would not be harmful error. *See* Tex. R. App. P. 44.1(a) (providing that judgment will not be reversed based on error of law unless appellate court concludes error probably caused rendition of improper judgment). We overrule Roper's fourth issue.

**Timing of service of CitiMortgage's summary-judgment motion**

In his second and third issues, Roper contends that the trial court erred by granting summary judgment in CitiMortgage's favor and considering Nixon's affidavit as evidence because CitiMortgage set its motion for hearing on less than 24 days' notice. *See* Tex. R. Civ. P. 166a(c) (providing that motion and supporting affidavits shall be filed and served at least 21 days before time at which hearing is set), 21a (providing that service by mail adds 3 days to any prescribed time period), 4 (providing that day of act starting time period is not included in time-period computation and last day of period is included in computation). He argues that Nixon's affidavit should have been excluded and the summary judgment should be reversed because of the trial court's error.

CitiMortgage served its motion and supporting affidavit by mail on September 7, 2011. Roper filed his opposition to CitiMortgage's motion on September 26, 2011, followed the next day by a motion for continuance of the summary-judgment hearing. The trial court held a hearing on September 29, 2011, during which the court notified the parties that he would be taking the respective summary-judgment motions under submission—not hearing oral argument—after they each had adequate time to respond to the motions. Upon learning that Roper had already filed his response to CitiMortgage's motion, the trial court decided that the submission date for CitiMortgage's motion was that day, September 29.

Under Rule 166a(c), the hearing date determines the time for the nonmovant to respond to the motion. *See* Tex. R. Civ. P. 166a(c). The nonmovant must file his response no later than 7 days before the hearing, or with leave of court, he may respond within the 7 days before the hearing. *Id.* Thus, the Rule itself contemplates that a party may be required to file a response to a summary-judgment motion in as little as 14 days from the time he is served with the motion, or 17 days if he is served by mail. *See* Tex. R. Civ. P. 166a(c); *Reedy v. Webb,* 113 S.W.3d 19, 26 (Tex. App.—Tyler 2002, pet. denied).

The purpose of Rule 166a(c)'s notice provision is "to prevent rendition of summary judgment without the nonmovant having full opportunity to respond on the merits of the motion." *Winn v. Martin Homebuilders, Inc.*, 153 S.W.3d 553, 556 (Tex. App.—Amarillo 2004, pet. denied). Notice of hearing or submission of the motion is mandatory because the hearing date determines the response due date. *See Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam). Roper filed his response 17 days after being served with CitiMortgage's motion by mail, but only 3 days before the hearing. Nevertheless, the trial court considered his response. While the trial court erred by taking the case under submission only 21 days after CitiMortgage served its motion by mail, instead of 24 days, the error was harmless because the trial court fully considered Roper's response and Roper had the amount of time contemplated by Rule 166a(c) to file his response.[10] *See id.* at 358-60 (holding that court's error was harmless when party received no notice

---

[10] We note that the parties refer to the time period that elapsed between CitiMortgage's service of the motion and the hearing as a 22-day period, but it was actually a 21-day period. *See Lewis v. Blake*, 876 S.W.2d 314, 316 (Tex. 1994) (construing rules and determining day of service is not included in computing notice for summary-judgment hearing, but day of hearing is included in computation).

of hearing or submission, but trial court considered party's response filed after order granting summary judgment was signed and then reconfirmed ruling).

**Denial of Roper's motion for continuance**

Also in his second and third appellate issues, Roper contends that the trial court erred by denying his motion for continuance. The trial court implicitly denied Roper's motion for continuance at the hearing on September 29 when it decided to take CitiMortgage's summary-judgment motion under submission as of that date. *See* Tex. R. App. P. 33.1(a)(2)(A).

We cannot conclude the denial of the motion was a clear abuse of discretion. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986) (explaining record must disclose clear abuse of discretion before we will disturb trial court's action on a motion for continuance). When deciding whether denial of a continuance constitutes a clear abuse of discretion, courts consider factors such as (1) the length of time that the case has been on file, (2) the materiality of any additional discovery sought, and (3) whether due diligence was exercised in obtaining discovery. *See Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (listing nonexclusive factors). The time factor favors the court's denial of the continuance. CitiMortgage's claim had been on file for nearly *five years* at the time it filed its summary-judgment motion. The September 7, 2011 motion filed by CitiMortgage is identical to the motion it filed three years earlier on August 25, 2008, except that in the second motion CitiMortgage attached its exhibits to the affidavit of its records custodian instead of to the motion, and the affidavit was from a different records custodian.

As for the factors related to the possible need for additional discovery, the only evidence CitiMortgage presented in support of its claim was the affidavit of Nixon (the second records custodian) and the attached authenticated copies of the warranty deed, the deed of trust, and

29

the note. Roper complained in his continuance motion that CitiMortgage's responses to his discovery requests were inadequate because Nixon had not been disclosed as a fact witness, and he sought either exclusion of Nixon's affidavit or an order compelling CitiMortgage to respond to his discovery requests and compelling Nixon to attend a deposition. Rule 252 requires that if a continuance is sought to depose a witness, the motion must include a description of the testimony the witness will probably give and what the party expects the testimony to prove. Tex. R. Civ. P. 252; *Verkin v. Southwest Ctr. One, Ltd.*, 784 S.W.2d 92, 94 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (noting that Rule 252 governs procedure for continuance motion made on grounds that party needs additional time for discovery before summary-judgment hearing). Roper requested sixty days to allow him to investigate Nixon and take her deposition, but he did not explain how taking deposition testimony from Nixon—who had already attested that she was a records custodian—would be material to his opposition to CitiMortgage's motion or what he expected her testimony to prove. Under these circumstances, Roper has not shown that the trial court abused its discretion by denying his motion for continuance.[11] We overrule Roper's second and third issues.

---

[11] Roper also challenges the trial court's denial of Roper Sr.'s motion for continuance. Roper Sr., the estate administrator, moved for a continuance because medical issues were preventing him from travel. Roper Sr. sought only to attend the hearing on CitiMortgage's motion; he did not seek additional time to oppose the summary-judgment motion. Roper Sr. was represented by counsel, and his counsel likewise did not seek additional time to oppose the summary-judgment motion. As discussed, the trial court did not hear oral argument on the motion. Thus, no action was necessary on Roper Sr.'s motion for continuance and arguably none was taken. But assuming without deciding that the trial court denied Roper Sr.'s continuance motion, we cannot conclude that the trial court abused its discretion because Roper Sr. requested a continuance only to attend oral argument, not to respond to the summary-judgment motion, and the trial court did not hear oral argument. *See Martin v. Martin, Martin & Richards, Inc.,* 989 S.W.2d 357, 359 (Tex. 1998) (per curiam) (explaining that error in granting summary-judgment motion with less notice than required by Rule 166a(c) was harmless when it did not prevent trial court from fully considering party's response).

**Conditions precedent**

In his fifth issue, Roper asserts that the trial court erred by granting CitiMortgage's summary-judgment motion and denying his no-evidence motion because CitiMortgage failed to prove that it satisfied the conditions precedent to enforcing its claim. Roper contends that the note and deed of trust contain express contractual provisions requiring CitiMortgage to provide notice of default, notice of intent to accelerate with a right to cure, notice of acceleration and notice of grievance and that CitiMortgage has not proved that it complied with those requirements.

The conditions precedent that Roper argues CitiMortgage was required to satisfy are derived from the deed of trust, i.e. the contract between Michael Roper and the Lender (and its successors and assigns). They are all provisions designed to avoid a situation in which nonjudicial foreclosure on real property occurs without notice to the borrower. While CitiMortgage would be required to satisfy these conditions precedent in an ordinary contract dispute, the Texas Legislature has provided a specific framework in the Probate Code for handling secured claims for money that are presented against an estate. *See, e.g.*, Tex. Prob. Code §§ 306, 313. In particular, Subsection 306(e) provides that if the property securing a preferred debt and lien claim has not been sold or distributed within six months from the date letters are granted, then the estate representative shall pay all maturities that have accrued on the debt and perform all terms of the contract securing the debt. *Id.* § 306(e). If the estate representative defaults on payment or performance, upon application of the claimholder, "the court shall . . . require the sale of the property free of the lien and apply the proceeds to the payment of the whole debt." *Id.* § 306(e)(2). After the estate representative took no action on its claim and the claim was deemed rejected by operation of law, CitiMortgage sought such a sale in its petition at the same time it sought court approval of its claim. CitiMortgage demonstrated

31

that it had a valid lien on the Property—the requirement for having the claim allowed and approved as a preferred debt and lien. The Property was not sold or distributed within six months from the date letters were granted, and Roper has presented no evidence that the estate representative promptly paid all maturities that had accrued on the debt. Thus, the trial court properly found that sale of the property was required under Section 306. We overrule Roper's fifth issue.

**Failure to serve new co-administrators by scire facias**

In his seventh issue, Roper argues that CitiMortgage's suit is barred by limitations because it was required to serve the successor co-administrators with scire facias to continue its suit against the estate.[12] Under Texas Rule of Civil Procedure 153, when an estate's personal representative resigns, the suit may proceed against the successor representative. Rule 153 provides that "the suit may be continued . . . upon like proceedings being had as provided in the two preceding rules, or the suit may be dismissed, as provided in Rule 151." Rule 151 is the rule governing suits after death of the plaintiff, and accordingly provides a provision for the defendant to have the suit dismissed if the plaintiff's heir or estate representative fails to appear after being served with scire facias. In this case, CitiMortgage is the plaintiff, so the process to follow after the estate representative's replacement is the process in Rule 152, which is the rule governing suits after the death of the defendant. Rule 152 provides that "[w]hen the defendant shall die, upon the suggestion of death in open court, or upon petition of the plaintiff, the clerk shall issue a scire facias for the administrator or executor or heir requiring him to appear and defend the suit and upon return of such

---

[12] A writ of scire facias is similar to personal service of citation and provides a person with notice of a suit, *see* Tex. R. Civ. P. 151-154, or revival of a dormant judgment, *see* Tex. Civ. Prac. & Rem. Code § 31.006.

service, the suit shall proceed against the administrator or executor or heir." Here, instead of a suggestion of death in open court, the court itself approved the original administrator's resignation and the new co-administrators' applications for appointment. Assuming without deciding that a scire facias needed to issue to inform the new administrators of the CitiMortgage suit, Rule 152 places that duty on the court clerk once the court is aware of the change in administrators. The appellate record does not reflect when CitiMortgage was notified of either the resignation of the original administrator or the appointment of the new administrators. Under these facts, we decline to find that CitiMortgage was required to petition the trial court to issue a writ of scire facias.

Furthermore, to the extent the failure to issue scire facias could be considered error, under these facts, it would be harmless error. A writ of scire facias, like a citation, brings a person before the court by giving him notice of the suit. *See* Tex. R. Civ. P. 154 (establishing that scire facias and its return are governed by rules applicable to citation); *see also Pewthers' Estate v. Holland Page Indus., Inc.*, 443 S.W.2d 392, 395-96 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.) ("[T]he writ of scire facias issued [in a case in which the deceased defendant had already filed an answer] should command the person to whom it is directed to 'appear and defend' the suit described in the writ rather than to appear by filing a written answer."). A suit revived by issuance of scire facias "is merely a continuation of the original action, and the substituted party stands in the same shoes as the original party . . . ." *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 390 n.2 (Tex. 1993). Rules 151 and 152 do not require the parties to plead or replead, and the legal representative of a decedent in a suit revived under those Rules is deemed to have adopted the pleadings of the decedent. *Pewthers' Estate*, 443 S.W.2d at 395.

The trial court issued the order appointing the new co-administrators on July 25, 2007. The order provided that the co-administrators would not be qualified to serve or receive issuance of letters of administration until they each posted a bond and retained a licensed Texas attorney to make an appearance in the court and represent to the court that the attorney was acting as attorney for the co-administrator. The appellate record does not reflect when the co-administrators met these conditions, but it is undisputed that at some point between July 25, 2007 and December 26, 2007, they did so.[13] Section 224 of the Probate Code provides that a successor administrator shall proceed to administer such estate as if his administration was a continuation of the former one. When CitiMortgage filed its amended petition on December 26, 2007, it deleted the prior administrator as a party defendant and substituted the new co-administrators as party defendants and noted in the amended petition that both co-administrators could be served with process through their attorneys of record. The certificate of service reflects that CitiMortgage served those attorneys with process via e-mail, U.S. mail, and certified mail with return receipt requested. CitiMortgage's service of process upon the new administrators provided them with notice of the suit against the estate and cured any error resulting from the trial court's failure to issue a writ of scire facias.[14]

---

[13] The appellate record contains the new co-administrators' special appearances filed to assert that the trial court did not have jurisdiction over them in the CitiMortgage suit because they had not been served with scire facias. In those filings, they represent that they were confirmed as co-dependent administrators in October 2007, but they also incorrectly state that they were appointed as administrators on June 28, 2007.

[14] Roper argues that serving the administrators with the petition through their attorneys of record did not give the trial court personal jurisdiction over the co-administrators. He contends that because Rule 154 requires the service of scire facias to comport with the rules applicable to citation, scire facias must be served on the defendant personally, unless the defendant or his attorney has waived service. We disagree. After seeking appointment from the trial court, the co-administrators were required to have their attorneys make an appearance in the probate proceeding in which this suit was pending and represent to the court that the attorneys were acting as attorneys for the co-administrators. An appearance made on behalf of a defendant in open court "has the same force and effect as if the citation had been duly issued and served as provided by law." *See* Tex. R. Civ. P. 120.

Roper contends that because CitiMortgage did not demonstrate due diligence in serving the new administrators with scire facias, it abandoned its suit. We understand his argument to be that after the original administrator resigned, CitiMortgage was required to obtain service of scire facias on the new administrators, and until it did so, the limitations period for its claim began to run again. We disagree. The date that CitiMortgage filed its original petition is the date that we would use to determine whether limitations had run. As noted above, after resignation of an administrator, the suit continues against his replacement. Resignation of an administrator does not restart the running of the limitations period. We overrule Roper's seventh issue.

**Limitations and discharge of debt based on alleged prior claims**

In his eighth issue, Roper asserts that CitiMortgage had made claims on the estate earlier than its October 6, 2006 claim, and those claims had been deemed rejected by operation of law. He argues that he had established the affirmative defenses of limitations and discharge of the debt because CitiMortgage had not filed suit on these alleged claims within the ninety-day period provided by Section 313 of the Probate Code. We disagree.

Roper bases his assertion that CitiMortgage had made prior claims on (1) two payoff quotes that it had provided in January 17, 2006 and June 12, 2006 correspondence to the original administrator upon the administrator's request and (2) the original administrator's memorialization of the debt owed to CitiMortgage in an exhibit to an application made by the administrator on February 23, 2006 to sell the property to Roper Sr. and Patricia Roper. None of these documents demonstrate that CitiMortgage had presented a claim to the trial court as contemplated by the

35

Probate Code. The Code provides that a claim for money against an estate must "be supported by an affidavit that the claim is just and that all legal offsets, payments, and credits known to the affiant have been allowed." Tex. Prob. Code § 301. Moreover, secured claims for money against an estate must be presented in the manner provided in Section 306. Section 306 requires the claimant to state whether the claimant seeks to have the claim allowed and approved as a matured secured claim or a preferred debt and lien against the specific property. *Id.* § 306.

The correspondence from CitiMortgage to the administrator does not purport to be a claim against the estate. Both letters refer to "the reinstatement figures *you requested* in connection with the above-referenced loan" and "the payoff figures *you requested*." (Emphasis altered.) While the February 2006 exhibit to the sale application identifies CitiMortgage and its attorneys as "claimants," the exhibit also specifically states: "There are no charges and claims against the Estate that have been approved or established by suit or have been rejected and may yet be established. However, the property in question has a note which is in default and is in danger of foreclosure." The document to which the correspondence is attached shows that the administrator did not consider the letters to be claims. In a footnote to the section entitled "Claims Rejected" the administrator states: "The below listed 'claims' are claims based on faxes received by the administrator [copies of which are attached hereto . . .] which *some of the heirs contend* constitute a claim(s) under the Texas Probate Code." (Emphasis added.)

A claim without the affidavit required by Section 301 is not a legally presented claim and thus does not activate the 90-day period provided in Section 313. *See Boney v. Harris*, 557 S.W.2d 376, 377-78 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ) (holding affidavit that did

36

not substantially comply with Section 301 did not activate the 90-day period); *see also City of Austin v. Aguilar*, 607 S.W.2d 310, 312 & n.1 (Tex. Civ. App.—Austin 1980, no writ) (explaining defect in form of claim did not invalidate claim and was distinguishable from invalid claims based on substantive defects found in cases such as *Boney*). While a claim may be presented to either the personal representative or the clerk of the court, *see* Tex. Prob. Code §§ 298, 308, a claim that does not comply with the substantive requirements of Section 301 is a void claim. None of the three documents identified by Roper comply with the substantive requirements of Section 301. Thus, even if we were to consider them claims presented to the administrator, they would be void. As such, they would not trigger the 90-day period established in Section 313. We overrule Roper's eighth issue.

**Effect of judgment on discharged estate administrator**

The trial court's judgment styles the case in the following manner: "In re: Michael C. Roper, Deceased[.] CitiMortgage, Inc., Plaintiff, v. William A. Roper and Kimberly Roper Flannery as Co-Dependent Administrators of the Estate of Michael C. Roper, Defendant(s)." Roper argues that the judgment is void as to Kimberly Roper Flannery because the trial court approved her resignation as co-administrator on June 1, 2010, and thus she should not have been named in the judgment. Roper never pointed out this defect in the pleadings to the trial court. In fact, in his pleadings, he styled the case as "In re: The Estate of Michael Christopher Roper, Deceased. CitiMortgage, Inc., Plaintiff, v. William A. Roper and Kimberly Roper Flannery as Dependent Co-Administrators of the Estate of Michael C. Roper, Defendant." Roper waived this defect in the

37

pleadings by failing to point it out by special exception.[15]  *See* Tex. R. Civ. P. 90.  We overrule Roper's eleventh issue.

**The scope of appellate issues raised by Roper**

In his ninth and tenth issues, Roper broadly asserts that the trial court erred by granting summary judgment for CitiMortgage and by denying his no-evidence summary-judgment motion for all the reasons set forth within his voluminous briefing on both motions and in his first eight issues on appeal.  Although an appellant may raise an issue that generally contends that the trial court erred in rendering summary judgment, *see Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970), the appellant must also "present argument and supporting authorities in support of that issue."  *Klentzman v. Brady,* 312 S.W.3d 886, 899 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see also* Tex. R. App. P. 38.1(i) (requiring appellant to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").  Consequently, we will review only the arguments actually raised by Roper in his nine other issues presented and briefed on appeal.  *See* Tex. R. App. P. 38.1(f) (requiring concise statement of all issues presented for review), (i); *Klentzman*, 312 S.W.3d at 899.

In his reply brief, Roper states that "[w]hile argument appearing within Issue Nos. 9 & 10 may appear sparse, the factual background set forth within [Roper's] *Statement of Facts* is

---

[15] Furthermore, we note that the style identifies Kimberly Roper Flannery in her capacity as estate administrator; it does not name her individually.  The judgment establishes CitiMortgage's secured claim against the estate and orders the sale of the Property.  As such, it has no effect on Flannery.  This is essentially a clerical mistake, and therefore, Roper should have sought to correct it in the trial court.  *See* Tex. R. Civ. P. 316 (allowing trial court to correct clerical mistakes in judgment after notice of motion to parties).

as complete as possible given the 50 page limit." He also asserts many times in his briefs and various motions that CitiMortgage has failed to controvert certain "facts" in his statement of facts, and that we are therefore required by Texas Rule of Appellate Procedure 38.1(g) to accept those facts as true. Under Rule 38.1(g), the statement of facts "must state concisely and *without argument* the facts *pertinent to the issues or points presented*." Tex. R. App. P. 38.1(g) (emphasis added). Roper's statement of facts is replete with argument; we are not required to accept his arguments as true. To the extent those arguments can be liberally construed to support his identified issues presented on appeal, we have done so. *See id.* 38.9 (requiring liberal construction of briefing rules), 38.1(f) ("The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."). We cannot, however, consider any arguments contained in his background section as raising other issues on appeal.[16]

To the extent that Roper contends in his ninth and tenth issues that we should consider other issues presented below, but not specifically identified in his appellate brief as issues presented and supported by argument, he has waived those points. *See id.* 38.1(f),(i); *see also Plexchem Int'l, Inc. v. Harris Cnty. Appraisal Dist.*, 922 S.W.2d 930, 930-31 (Tex. 1996) (per

---

[16] Moreover, we note that throughout Roper's already voluminous briefing, he refers us to extensive portions of his pleadings in the trial court as support for his various issues. On appeal, a party must argue his claim of error in his appellate brief; "it is insufficient simply to refer the appellate court to the party's trial court arguments." *Allen v. United of Omaha Life Ins. Co.,* 236 S.W.3d 315, 325 (Tex. App.—Fort Worth 2007, pet. denied). "Were we to approve of this tactic, appellate briefs would be reduced to a simple appellate record reference to a party's trial court arguments. Additionally, this would be an open door for parties to circumvent the appellate brief page limitations." *Guerrero v. Tarrant Cnty. Mortician Servs. Co.*, 977 S.W.2d 829, 832-33 (Tex. App.—Fort Worth 1998, pet. denied). Accordingly, we have only considered the arguments actually presented by Roper in his appellate briefing.

curiam) (holding that *Malooly* point of error preserved error on issue that was supported by argument and authorities in brief). We are only required to consider arguments presented on appeal; we need not further examine whether the trial court generally erred by granting summary judgment. *See Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 874 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We overrule Roper's ninth and tenth issues.

## CONCLUSION

Having overruled Roper's eleven issues on appeal and determined that he raised no material fact issues that preclude summary judgment for CitiMortgage, we affirm the trial court's order denying Roper's summary-judgment motion and granting summary judgment in favor of CitiMortgage.[17]

---

[17] Roper also filed three motions. First, we deny his motion to strike an exhibit to CitiMortgage's brief. We note, however, that we only consider documents attached to briefing that appear in the appellate record as filed, and thus we did not rely upon the exhibit when deciding the appeal. *See* Tex. R. App. P. 34.1; *see also Till v. Thomas*, 10 S.W.3d 730, 733-34 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (attaching documents as exhibits or appendices to briefs is not formal inclusion in appellate record). Second, we deny Roper's motion to strike arguments first raised on appeal by CitiMortgage. We note that Texas Rule of Appellate Procedure 33.1 applies to the party "presenting a complaint for appellate review." The Rule does not require a party opposing appellate complaints to preserve error. CitiMortgage is not seeking to reverse any error by the trial court. Moreover, CitiMortgage has not advanced new grounds for affirming the trial court's summary judgment on appeal—its claim was based on its argument that it had a valid lien and that the loan was in default. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (holding summary judgment cannot be affirmed on grounds not expressly set out in the motion or response). CitiMortgage was not required to respond to every argument raised by Roper below to preserve its right to oppose those arguments made by Roper on appeal. Finally, we deny Roper's motion to strike patently false, unsupported, and legally groundless arguments. To the extent his motion contains rebuttal arguments to arguments made by CitiMortgage in its appellee's brief, we have considered those rebuttal arguments to be supplemental briefing by Roper. *See* Tex. R. App. P. 38.7 (permitting appellate court to allow supplemental briefing whenever justice requires).

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   November 27, 2013