Donald REEDY, Appellant,

v.

Crayton WEBB and Gaylord Broadcasting Company, Appellees.

No. 12–01–00301–CV.

Court of Appeals of Texas, Tyler.

Nov. 27, 2002.

Rehearing Overruled Jan. 9, 2003.

Emil Lippe, Jr., Lippe & Assoc., Dallas, for appellant.

Roger C. Diseker, Kelly, Hart & Hallman, P.C., Fort Worth, for appellees.

Panel consists of GOHMERT, C.J., WORTHEN and GRIFFITH, JJ.

SAM GRIFFITH, Justice.

Donald Reedy ("Reedy") appeals the trial court's order granting summary judgment in favor of Crayton Webb ("Webb") and Gaylord Broadcasting Company ("Gaylord") (collectively "Appellees"). Reedy raises four issues on appeal. We affirm.

## BACKGROUND

Webb, a reporter for a Dallas television station owned by Gaylord, reported a story about mold contamination in a house recently purchased by the Kundysek family (the "Kundyseks"). The home was constructed by Reedy's company, Stone Investments. The nature of Reedy's business was to buy an older home, tear it down, make additions to the foundation and construct a home on the foundation with the additions. The Kundyseks' home

was a remodeled[1] home constructed on such a hybrid foundation.

On December 21, 1998, ten days after the Kundyseks moved into their home,[2] a substantial water leak developed. The Kundyseks contacted Reedy who sent workers to the house the next morning. However, when Reedy's workers arrived at the house, the Kundyseks, believing that the pumps Reedy's crew had brought with them were inadequate, sent the workers away. Reedy contacted the Kundyseks, who informed him that they would rely on their insurance company, Chubb, to clear the water and repair any damage caused thereby.

After extensive research, including interviews with both the Kundyseks and Reedy, Webb's report was broadcast on the evening news (the "television broadcast") and posted on the station's internet site (the "web article"). The substance of the report on the station's website, which tracks the language of the television broadcast closely,[3] is as follows:[4]

### Call for Action: Dallas Family Moves into Contaminated Home

Tuesday September 28, 1999

(KTVT) Tonight we have the story of a Dallas family who thought they bought the perfect house in the perfect neighborhood. That is until thousands of gallons of water turned their dream home into a money pit. Call for Action investigator Crayton Webb shows us why this family was forced to leave the house the city says they never should've moved into.

"It was our dream house. We wanted to raise our kids here," said Deeann Kundysek.

The house they'd hoped to live in for the next thirty years is now environmentally contaminated.

David and Deeann Kundysek paid nearly a million-dollars last year for a Preston Hollow home, but 10 days after moving in; a joint to the main water line broke, flooding the foundation.

According to engineering reports, 70,000-gallons of water was underneath the Kundyseks' house. To give you an idea just how much that is you'd have to fill up a swimming pool more than three times to get that much water.

The Kundyseks immediately called their builder, Don Reedy of Stone Investments. The Kundyseks say Reedy's men showed up with a small inadequate water pump, so they turned them away and called their insurance company to get the job done quicker.

But within weeks the Kundysek's daughters began getting sick, 6 month-old, Kennedy, even failed her first hearing test.

---

1. Based on our review of the summary judgment evidence, although the Kundyseks home was technically a remodel, every part of the home was newly constructed except for the old portion of the foundation.

2. Reedy stated in his affidavit that he agreed to let the Kundyseks close and move in prior to completion with the understanding that the drainage improvements and final building inspections were not yet complete.

3. A majority of the main points of the web article are taken verbatim from the television broadcast. That being said, there are some statements that were in the television broadcast which were not included in the web article. We have viewed the television broadcast and conclude that the additional statements contained therein would not have any bearing on our determination of the gist of the story as set forth herein. For all intents and purposes, the gist of the television broadcast and the web article is the same.

4. In the interest of accuracy, the text of the web article has been reproduced verbatim, with any peculiarities in spelling, grammar and punctuation intact.

"I usually don't see a brand new home like this in this bad of condition," said Ken McBride, Texas Health Department.

Ken McBride of the Texas Health Department says carcinogenic mold was growing within the home's walls.

"Some of those molds are extremely bad. They can put you in the hospital permanently," said Ken McBride. The builder, Don Reedy[,] offered to buy the house back for $550,000. The Kundyseks' insurance company, Chubb, has offered $300,000 to fix the house, but there's no guarantee the mold won't return.

City records show the Kundysek's house failed the final plumbing inspection before the deal was closed. The city says the builder never should have allowed the family to move in.

Call for Action couldn't find the plumber and Don Reedy refused an on camera interview, but he claims the Kundyseks knew of the unfinished inspections and insisted on moving in anyway.

The Kundyseks say they thought their house was brand new. Even the realtors list the house as "quality new construction" built in 1998. But the house was actually a remodel Reedy had used part of the foundation from a previous house that sat on the same lot.

"We got a new home with some old parts still mixed in, basically," said the Kundyseks.

Engineering reports show that old foundation had caused water problems under the house previously and when the 70,-000–gallon leak came.

The Kundyseks' inspector found poor drainage, a muddy crawlspace and the hardwood floors cupping the month before the family moved in.

Reedy insists the Kundyseks knew they were getting a remodel. He, along with an industrial hygienist he hired, say the mold grew because the family and their insurance company let the water from the leak stand too long. So Call for Action hired our own professional engineer, Ron Reed.

"The old foundation system, the way it was done in this case, essentially destroyed the house," said Ron Reed, professional engineer.

Our inspector found a number of structural problems under the house. He says the old foundation acted as a dam and trapped the water. Even after a Texas summer, he says the crawlspace is still wet.

Reedy insists the Kundyseks house is a unique case. He provided us a list of satisfied customers, including Terry Clampitt.

"He seems like he was always fair. If it wasn't fair he would tell me. But usually everything's been fine. I've been really happy," said Terry Clampitt, Reedy homeowner.

But David and Deeann Kundysek say they will never live in their house again, but they're still paying for it with their money and with a sick child. "This isn't supposed to happen when you buy a new house. You're not supposed to be putting your kids at risk," said Deeann Kundysek.

Call for Action has learned that the family who lives across the street from the Kundyseks is suing Don Reedy because they also found standing water under their home and mold.

Reedy denies any wrongdoing in that case as well.

If you're buying a home, new or remodeled, be aware that the City of Dallas does not inform homebuyers if their house has passed all its inspections.

You have to contact your builder or the city.

The Kundyseks' house was ultimately demolished.

Reedy filed the instant suit in May 2000. Appellees filed their motion for summary judgment on February 1, 2001. Reedy amended his petition to include only allegations of libel and slander and responded with supporting evidence to Appellees' motion for summary judgment. After being reset four times, a hearing on Appellees' motion for summary judgment was held on June 1, 2001. The trial court ultimately granted Appellees' motion for summary judgment. Reedy filed a motion for new trial and asked the trial court to reopen the summary judgment evidence based on the imposition of impossible deadlines, newly discovered evidence and allegations that Appellees had abused the discovery process. The trial court overruled Reedy's motion for new trial and this appeal followed.

## DEFAMATION

### Standard of Review

■ The standard for reviewing summary judgment is the same for defamation cases as for other types of cases. *See Simmons v. Ware,* 920 S.W.2d 438, 443 (Tex.App.-Amarillo 1996, no writ) (citing *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989)). In reviewing a 166a(c) motion for summary judgment, this court must apply the standards established in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985), which are as follows:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon,* 690 S.W.2d at 548–49. A movant must either negate at least one essential element of the non-movant's cause of action, or prove all essential elements of an affirmative defense. *See Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment proof. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952). The only question is whether or not an issue of material fact is presented. *See* TEX.R. CIV. P. 166a(c). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See, e.g., City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–79 (Tex.1979). Summary judgment should be affirmed on appeal if any of the grounds presented in the motion are meritorious. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

### Governing Law

■ Generally, to recover on a claim for defamation, the plaintiff must prove the defendant published a false defamatory statement to a third party about the plaintiff. *See Clarke v. Denton Publishing Co.,* 793 S.W.2d 329, 331 (Tex.App.-Fort Worth 1990, writ denied), *overruled on other grounds, Cain v. Hearst Corp.,* 878 S.W.2d 577, 579 (Tex.1994); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon

1997). Truth is an absolute defense to a defamation claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.005 (Vernon 1997). A media defendant is entitled to summary judgment upon a showing of the substantial truth of its publication. *Lewis v. A.H. Belo Corp.*, 818 S.W.2d 856, 858 (Tex.App.-Fort Worth 1991, writ denied); *see McIlvain v. Jacobs*, 794 S.W.2d 14, 15–16 (Tex. 1990). As an initial matter, the publication should be examined in its entirety. *See Simmons v. Ware*, 920 S.W.2d 438, 444 (Tex.App.-Amarillo 1996, no writ). To determine whether a statement is substantially true, we must consider "whether the alleged defamatory statement was more damaging to the plaintiff's reputation in the mind of the average listener than a truthful statement would have been." *Jacobs*, 794 S.W.2d at 16. Such an evaluation involves looking to the "gist" of the publication. *Id.* The word "gist" means "the main point or part" or "essence." WEBSTER'S COLLEGIATE DICTIONARY 493 (10th ed. 1993). If the underlying facts related to the "gist" of the alleged defamatory statement are undisputed, then we disregard any variance with respect to factual items of secondary importance. *Id.*

### The Gist and Substantial Truth

■ In their motion for summary judgment, Appellees argued the affirmative defense of truth. In his first issue, Reedy contends that the trial court was required to expressly determine the gist of the stories prior to determining whether there was a material fact dispute concerning the truth of the gist of the stories. While we agree that the epicenter of our inquiry rests on the facts underlying the gist of the stories, *see Jacobs*, 794 S.W.2d at 16, we disagree that the trial court was required to expressly determine this gist. In order to expressly determine the gist of the stories, the trial court would have been required to make findings of fact and conclusions of law, which have no place in a summary judgment context. *See Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex. 1994).

In his second issue, Reedy argues that the trial court erred in failing to consider the cause of action arising from Appellees' web article separately from the cause of action arising from the television broadcast. We disagree. First, as set forth above, we have concluded that the gist for the web article and television broadcast are essentially the same. Second, even if there were a different gist for the web article as opposed to the television broadcast, there is no indication in the record that the trial court failed to consider the two publications separately. *See Linwood*, 885 S.W.2d at 103. Reedy's second issue is overruled.

■ Shifting our inquiry to the remainder of Reedy's first issue, it is necessary, in the interest of clarity, for this court to expressly determine the gist of the stories at issue. *See, e.g., KTRK Television v. Felder*, 950 S.W.2d 100, 106–07 (Tex.App.-Houston [14th Dist.] 1997, no writ). Based on our review of the television broadcast and the web article, we conclude that, in the mind of the average reader, the gist of the story, is as follows: After only living there for a short time, the Kundyseks moved out of the house they bought from Reedy, the builder, because, following a substantial plumbing leak, water became trapped in the foundation and did not drain properly, toxic mold developed, and the house became contaminated.

We next consider whether any facts in the summary judgment record that support the gist of the story are disputed. *See Jacobs*, 794 S.W.2d at 16. Based on our review of the record, we find no disputed facts supporting that (1) the Kundyseks moved out of their house, (2) the

Kundyseks bought the house from Reedy, who was the builder, (3) a substantial plumbing leak occurred at the house after the Kundyseks had lived there for only ten days, (4) toxic mold developed, and (5) the house became contaminated. Thus, we are left to consider whether the summary judgment evidence that the water became trapped in the foundation and did not drain properly is disputed.

Appellees' evidence on this point is the report of an independent structural engineer, Ron Reed. In his response to Appellees' motion for summary judgment, Reedy does not dispute the fact that the water became trapped and did not drain properly. Rather, Reedy argued that Appellees recklessly disregarded the truth by not disclosing that (1) the Kundyseks closed on their home before it was complete, (2) certain foundation work, such as drainage, could not be completed due to excessive rain, and (3) other work, such as crawl space ventilation, was specified and agreed to, but that the Kundyseks did not allow Reedy's crew to complete the work after they moved in. While the evidence relied on by Reedy in his response to Appellees' motion for summary judgment may provide an explanation for the problem, it does not serve to dispute Appellees' summary judgment evidence underlying the gist of the stories. Moreover, neither the affidavits of Reedy, Paul Janicek (Contract Construction Superintendent) or Michael Jensen (Home Inspector hired by Kundyseks) offered by Reedy as summary judgment evidence provide any detailed support for Reedy's argument. These affidavits fail to set forth what attempts, if any, were made by Reedy to complete the foundation work or that the Kundyseks refused to let Reedy complete such work

before the plumbing leak exacerbated the foundation deficiencies. Further still, although there is summary judgment evidence that such work was, at some point, delayed due to excessive rain, there is no summary judgment evidence regarding when this rain delay occurred, whether the rain persisted after the Kundyseks moved into the house or when, at the earliest, such work could have taken place. Finally, both the television broadcast and the web article specifically state Reedy's claim that the Kundyseks "knew of unfinished inspections but insisted on moving in anyway." As such, we conclude that the summary judgment evidence related to the facts underlying the gist of the stories at issue is undisputed. Therefore, we hold that the television broadcast and the web article are substantially true. Reedy's first issue is overruled.[5]

### RECONSIDERATION OF SUMMARY JUDGMENT MOTIONS AND EVIDENCE

In his third and fourth issues, Reedy contends that the trial court erroneously refused to reconsider Appellees' motion for summary judgment and reopen the summary judgment evidence because Reedy labored under an impossible set of deadlines to submit summary judgment evidence, because he presented newly discovered evidence in support of his motion for new trial, and because Appellees engaged in discovery abuse. The trial court's determination of whether to allow reopening of the summary judgment is left to its discretion. *See Farmer v. Ben E. Keith Co.*, 919 S.W.2d 171, 176 (Tex.App.-Fort Worth 1996, no writ); *Beavers v. Goose Creek Consol. I.S.D.*, 884 S.W.2d 932, 935 (Tex.App.-Waco 1994, writ denied); *Wales v. Williford*, 745 S.W.2d 455,

---

5. Since we have determined that the television broadcast and web article are substantially true, we need not determine whether Reedy is a public figure or whether he demonstrated actual malice.

457 (Tex.App.-Beaumont 1988, writ denied). An abuse of discretion occurs when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex.1996).

■ Though Reedy argues in his brief that he was laboring under an impossible set of deadlines, he fails to address the fact that Appellees' hearing on its motion for summary judgment was reset four times before it was finally heard. Appellees' motion for summary judgment was filed on February 1, 2001. The motion was ultimately heard on June 1, 2001, four months after it was filed. Thus, Reedy was not required to file a response until May 25, 2001, 114 days from the date Appellees filed their motion. Under the Texas Rules of Civil Procedure, a party may be required to file a response to a motion for summary judgment in as little as fourteen days from the time he is served with the opposing party's motion. *See* Tex.R. Civ. P. 166a(c). Here, the minimum time afforded by the law was increased by a factor of eight. Moreover, although Reedy complains of discovery abuse on Appellees' part and alleges groundless objections to his discovery requests, the record does not reveal that Reedy ever filed a motion to compel in this regard. Finally, although the trial court is permitted to reopen the summary judgment evidence, *see* Tex.R. Civ. P. 166a(f), it was not required to do so. *See Farmer*, 919 S.W.2d at 176.

■ In support of his argument that additional evidence should have been allowed, Reedy cites *Risner v. McDonald's Corp.*, 18 S.W.3d 903, 908 (Tex.App.-Beaumont 2000, pet. denied), in which the court stated that "a party may not present any additional evidence upon a motion for new trial, where that evidence is not newly discovered." *Risner*, 18 S.W.3d at 908. However, it is incumbent upon the party

seeking a new trial on the ground of newly discovered evidence to satisfy the trial court that the evidence has come to his knowledge since trial, that it was not owing to the want of due diligence that it did not come sooner, that it is not cumulative, and that it is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983).

■ In both his motion for new trial and during the hearing thereon, although Reedy refers to the evidence he sought to supplement as "essential," he offers little by way of cogent argument that the evidence was so material that it would probably produce a different result if a new trial were granted. Indeed, considering our determination of the gist of the story as set forth above, the supplemental evidence offered by Reedy does not dispute the underlying facts thereof. Moreover, to the extent that this supplemental evidence relates to attempts by Reedy to finish the foundation work, as opposed to his offering to correct the problems following the plumbing leak that magnified the foundation's shortcomings, such evidence is no more specific than the affidavit testimony offered by Reedy, Paul Janicek or Michael Jensen in conjunction with Reedy's original response. In fact, even assuming these matters were material, Reedy makes no argument relating to why the matters set forth in his letter of January 20, 1999 could not have, in the exercise of due diligence, been incorporated in Reedy's affidavit in the first place. Finally, as it is not pertinent to the gist of the stories whether Reedy could have successfully corrected the problem at the Kundysek house following the water leak, the affidavit of Julie Reynolds, whose similar complaints were satisfied by Reedy, is not material. We hold that Reedy failed to

meet his burden for presenting newly discovered evidence.

Since Reedy was given an extensive amount of time to file a response to Appellees' motion for summary judgment, since he failed to meet his burden for presenting new evidence in conjunction with his motion for new trial, and since he failed to raise allegations of discovery abuse via a motion to compel, we conclude that the trial court did not act arbitrarily or unreasonably in overruling Reedy's motion for new trial, and therefore, hold that the trial court did not abuse its discretion in this regard. Reedy's third and fourth issues are overruled.

Accordingly, the trial court's order granting Appellees' motion for summary judgment is **affirmed.**

GOHMERT, JR., C.J., concurring.

GOHMERT, JR., Chief Justice, concurring.

I respectfully concur. In a full analysis of the published stories by Appellants, the gist appears to be a good deal more about Appellant than indicated in the majority opinion. It would seem that the gist of the story should be more as follows: the Kundyseks bought a house that was advertised to be newly constructed by Reedy, though Reedy had used part of the foundation from the previous house on the lot; after they moved in, the Kundyseks had a substantial plumbing leak develop that allowed a major accumulation of water under the house; the water was not drained timely causing mold contamination of the house and the Kundyseks moved out of the house; Reedy says it was a unique problem, yet he is being sued by another homeowner across the street for a similar problem.

In fairness to Reedy, he and his actions are at the heart of the "gist" of the stories in the mind of the average reader or viewer. The stories may well have cast him in a bad light. As stated in the majority opinion, however, the applicable law here compels an analysis of the stories and the gist, with truth being an absolute defense. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.005 (Vernon 1997). According to *Lewis* and *McIlvain* also cited above, a media defendant is entitled to summary judgment upon a showing of the substantial truth of its publication. Unfortunately for Appellant, the supporting evidence for the facts underlying the gist of the stories is indisputable. Until and unless our supreme court reconsiders the requirements for reviewing such a case and the feasibility of determining a "gist," I must concur in the outcome of this decision.