**Reversed and Remanded and Opinion Filed May 12, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00439-CV

**QBE AMERICAS, INC. AND SONIA DIAZ, Appellants**
**V.**
**DEYLAN WALKER, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-14300**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Pedersen, III

Appellee Deylan Walker sued appellants QBE Americans, Inc. ("QBE") and

Sonia Diaz for defamation in this dispute concerning statements Diaz made to law

enforcement. Appellants filed a motion to dismiss pursuant to the Texas Citizens

Participation Act (TCPA), which was heard before the trial court. The motion was

denied by operation of law. In this Court, appellants raise a single issue, arguing that

Walker's claims should have been dismissed under the TCPA. *See* TEX. CIV. PRAC.

& REM. CODE ANN. §§ 27.001–.011. We reverse the denial of appellants' motion to

dismiss as to Walker's defamation claim and remand the cause to the trial court.

# I. BACKGROUND

## A. Blackmon's Insurance Claim, Estimates, and Invoices

On May 1, 2018, Donna Blackmon reported a claim for hail damage to her home in Rockwall, Texas to QBE Insurance Corporation. QBE was the claims administrator for QBE Insurance Corporation, and it opened a claim file for Blackmon's hail damage claim. QBE assigned Diaz to handle Blackmon's claim, and QBE's independent adjuster prepared a first estimate for the claim.

Blackmon hired Deylan Walker as her contractor, and on May 11, 2018, Walker complained to Diaz that this first estimate did not cover all of the damage to Blackmon's property.[1] On June 15, 2018, Walker emailed QBE a different estimate and an invoice from his company—both specifying $35,150.85 in repair cost. QBE then engaged a second independent adjuster, ASI, to prepare an estimate. ASI and Walker agreed on a price of $23,639.53 to repair Blackmon's property. On July 2, 2018, QBE approved an additional payment to Blackmon in the amount of $11,594.52. Also on July 2, 2018, Walker called QBE to request "final check be express and that mortgage be left off the final check." Diaz also spoke with Walker on July 2, and she advised him (i) on the agreed final price and (ii) that he could finish his work for Blackmon.

---

[1] During this time, QBE made two payments to Blackmon in the amounts of (i) $559.27 paid on May 10, 2018, and (ii) $6,296.88 paid on June 7, 2018.

On July 13, 2018, Walker submitted an amended invoice for $23,639.53 to QBE. Walker's amended invoice stated "Storm Damage (Revised 7/11/18) Invoice per DW Group Construction Company final estimate as attached." Diaz interpreted this amended invoice as the final invoice and released the depreciation check, which is not paid until the work is complete, to Blackmon. QBE closed its file on Blackmon's claim on July 18, 2018. QBE made all payments to Blackmon, and Blackmon paid Walker $12,000.00 to begin work.

**B. Insurance Investigation and Criminal Charge**

Following QBE's closure of Blackmon's claim, Blackmon contacted QBE several times to voice her concerns with Walker's demands regarding additional payment and Walker's lack of completed work. Blackmon spoke with Kevin Magee, Diaz's supervisor. QBE began a special investigation, which included a three-way call with Blackmon and Walker. Ultimately, Blackmon informed QBE that she was going to file a complaint against Walker, and QBE concluded Walker "misrepresented his final invoice as if the work had already been completed." QBE closed its special investigation on August 27, 2018, and it referred the matter to the Texas Department of Insurance. On August 29, 2018, Blackmon spoke with Diaz to inform her of the situation with Walker and complain about QBE's handling of the claim.

On August 30, 2018, Rockwall Police Department Detective Tinsley spoke with Diaz about Blackmon's claim and Walker. On August 7, 2019, Blackmon

–3–

informed Diaz that the district attorney had charged Walker with a felony. A Rockwall grand jury indicted Walker on a charge of theft of property between $2,500.00 and $30,000.00.

**C. Walker's Defamation Suit**

On September 10, 2019, Walker filed suit against, among other defendants, appellants for defamation. Walker based his claims of defamation on Diaz's statements to Detective Tinsley. Walker alleged Diaz's reports to Detective Tinsley caused the felony charge against him and resulted in a negative rating and review by the Better Business Bureau in Dallas. On November 14, 2019, appellants filed a motion to dismiss Walker's suit pursuant to the TCPA, asserting that Walker's claims are related to appellants' exercise of the right of free speech, the right of association, and the right to petition. On February 10, 2020, Walker amended his petition to add tortious interference with contract and conspiracy claims.[2]

The trial court heard appellants' TCPA motion on February 17, 2020, but entered no order. The trial court denied appellants' motion by operation of law on March 18, 2020. CIV. PRAC. & REM. § 27.008(a).[3] This interlocutory appeal followed.

---

[2] Walker alleged that Diaz and another QBE adjustor, Stephanie Sifford, acted together to tortiously interfere with his contract with a different QBE-insured individual. Walker's conspiracy claim alleged QBE and Blackmon acted in concert to defame Walker.

[3] "If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal." CIV. PRAC. & REM. § 27.008(a). The court must rule on a motion under Section 27.003 not later than the 30th day following the date the hearing on the motion concludes. CIV. PRAC. & REM. § 27.005(a).

–4–

## II.    ISSUE RAISED

Appellants raise a single issue on appeal—whether the trial court erred in denying appellants' motion to dismiss pursuant to the TCPA.

## III.    STANDARD OF REVIEW

We review *de novo* a trial court's ruling on a TCPA motion to dismiss. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). In doing so, we consider the pleadings and supporting and opposing affidavits in the light most favorable to the non-movant. *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.).[4] Whether the TCPA applies to a non-movant's claims is an issue of statutory interpretation that we also review *de novo*. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

## IV.    TCPA

We construe the TCPA "liberally to effectuate its purpose and intent fully." CIV. PRAC. & REM. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). We ascertain and give effect to the Legislature's intent as expressed in the language of the statute. *Harper*, 562 S.W.3d at 11. We construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results.

---

[4] A plaintiff's pleadings are usually "'the best and all-sufficient evidence of the nature of the action.'" *Hersh*, 526 S.W.3d at 467 (quoting *Stockyards Nat'l Bank v. Maples*, 95 SW.2d 1300, 1302 (Tex. 1936)).

*Youngkin*, 546 S.W.3d at 680. As directed by the supreme court, we must adhere to the definitions in the TCPA. *Adams v. Starside Custom Builders LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Youngkin*, 546 S.W.3d at 680. However, in the process of applying "isolated" definitions, we are required to construe those individual words and provisions in the context of the statute as a whole. *Youngkin*, 546 S.W.3d at 680.

"The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding). The legislature enacted the TCPA to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *See* Civ. Prac. & Rem. § 27.002; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017).

To achieve this purpose, the statute provides a two-step procedure to expedite dismissal of claims brought to intimidate or to silence a defendant's exercise of a protected right. *Coleman*, 512 S.W.3d at 898; *see also* Civ. Prac. & Rem. §§ 27.003(a), 27.005(b); *Youngkin*, 546 S.W.3d at 679. First, a movant seeking dismissal under the TCPA bears the burden of showing—by a preponderance of the evidence—that the legal action is based on, relates to, or in response to the movant's exercise of (i) the right of free speech, (ii) the right of association, or (iii) the right to petition. Civ. Prac. & Rem. § 27.005(b); *see also S & S Emergency Training*

–6–

*Solutions, Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).[5] Second, if the movant shows the TCPA applies to the non-movant's legal action, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. CIV. PRAC. & REM. § 27.005(c); *Elliott*, 564 S.W.3d at 847. However, even if the non-movant satisfies this requirement, the trial court must still dismiss a claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the [non-movant's] claim." CIV. PRAC. & REM. § 27.005(d); *see Youngkin*, 546 S.W.3d at 679–80.

## V.  DISCUSSION

### A. Whether the TCPA Applies to Walker's Defamation Action

Appellants contend that the TCPA applies to Walker's suit because it "is based on or in response to [appellants'] free speech, free association, and petition rights." The Texas Supreme Court has explicitly held that the TCPA applies to defamation claims. *See Adams*, 547 S.W.3d at 897. Nevertheless, we first address whether appellants' actions are protected by the right of free speech, as it is dispositive to the first step of our TCPA analysis.

Under the TCPA, the "exercise of the right of free speech" means "a communication made in connection with a matter of public concern." CIV. PRAC. & REM. § 27.001(3). We must first determine whether appellants' actions were

---

[5] The movant must show only that the act is protected by at least one of those rights as defined by the TCPA. CIV. PRAC. & REM. § 27.005(b).

"communications." The TCPA defines a "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." CIV. PRAC. & REM. § 27.001(1).

Here, Walker's suit against appellants is based on statements Diaz made to Detective Tinsley as part of Tinsley's law enforcement investigation of Walker. The record does not contain the complete conversation between Diaz and Detective Tinsley. However, Walker conducted a deposition of Diaz in which he questioned Diaz about her statements to Detective Tinsley.

> Q. (By [Walker's counsel]) . . . Did you tell Officer Tinsley—did Officer Tinsley—do you recall Officer Tinsley asking you, "[Walker] called up and lied to you guys as far as the work being done and being finished and turned in paperwork to that effect to you guys. Right?"
> And[,] you answered, "Yes." Like we told—"[Walker] told me it was done, but then when [the special investigation unit] called him he said, 'Oh, no. I never told her that.' But[,] you sent in an invoice that said final invoice."
> And[,] Officer Tinsley said, "Okay."
> And you said, "He told me, because I put it in my notes, that he said the work was completed. So, of course he's pulling back on that."
> Isn't that what you said?
>
> A. According to this transcript, yes.
>
> Q. Do you recall saying that, now that you've listened to the tape?
>
> A. I heard it on the tape recording, yes.
> . . .
> Q. (By Mr. Robinson) Did you tell Detective Tinsley that we had another claim, not her, another person, that had the same contractor. And she gave him less money than ours did, than Blackmon did. But he still walked away with some of her money too.
> Do you recall saying that to Officer Tinsley?

A. According to the transcript with Detective Tinsley and the call, yes.

Q. So you do recall—actually recall that? Does that—did that help you remember that conversation?

A. Hearing the recording? Yes.

. . .

Q. Now, Officer Tinsley asked you about speaking to Kevin Magee, correct?

A. I believe so. Let me double check.

Q. And[,] you directed him to somebody else[,] other than Mr. Magee, correct?

A. I initially sent [Detective Tinsley] to our [special investigation unit] investigator, which was Shawn. But[,] he did ask me about Kevin, and I told him Kevin was one of the managers there.

Walker further complains of several notes from QBE call logs—which relate to Diaz's statements to Detective Tinsley—as defamatory. The record shows that Diaz made communications in the form of oral statements to Detective Tinsley and written statements in the form of the notes. Appellants meet the "communication" element of an "exercise of the right of free speech." CIV. PRAC. & REM § 27.001(3). We must next determine whether the communications were made in connection with a matter of public concern. *Id.*

The TCPA defines a "matter of public concern" as "a statement or activity regarding . . . (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." CIV. PRAC. & REM. § 27.001(7). Walker argues that Diaz denied several assertions she made in speaking with Detective

Tinsley, and therefore, the TCPA does not apply to Diaz's allegedly false statements to Detective Tinsley. In determining application of the TCPA, "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).[6] Nevertheless, Walker asserts that the TCPA does not apply if a petition, instead of complaining about a free speech issue, complains of "only the untruthful statement constituting defamation . . . because the statements complained of were not a 'matter of public concern.'" The Texas Supreme Court expressly rejected this assertion in *Adams v. Starside*:

> We emphasize that whether Adams's colorful allegations were valid, partly valid, or completely concocted by a disgruntled resident with an axe to grind is not the question before us. Further litigation may seek those answers. The question at this stage is whether Adams's challenged statements involve a "matter of public concern" as defined by the TCPA.

*Adams*, 547 S.W.3d at 897. Thus, the truthfulness of the complained-of statements is not determinative of whether the TCPA applies. *Id.*; *see Coleman*, 512 S.W.3d at 901 (holding the TCPA applied to untrue communications); *Garton v. Shiloh Vill. Partners*, LLC, No. 12-16-00286-CV, 2017 WL 6884451, at *3 (Tex. App.—Tyler Aug. 23, 2017, no pet.) (mem. op.) (holding that a TCPA movant has no burden to substantiate the truth of her communications).

---

[6] "When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more." *Hersh*, 526 S.W.3d at 467.

In *Watson v. Hardman*, our Court discussed "community well-being" in the TCPA context of a "matter of public concern" after the Hardmans filed suit against Watson for allegedly accusing the Hardmans of stealing publicly solicited charitable funds:

> The statute does not define "community well-being," but courts have held statements to be related to community well-being in a variety of contexts:
>
> > • Statements about a children's baseball coach's angry and aggressive behavior during a game. *Bilbrey v. Williams*, No. 02–13–00332–CV, 2015 WL 1120921, at \*11 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.).
> > • Statements by homeowners association members about possible misconduct by the association's property manager. *Neyland v. Thompson*, No. 03–13–00643–CV, 2015 WL 1612155, at \*5 (Tex. App.—Austin Apr. 7, 2015, no pet.) (mem. op.).
> > • Statements accusing someone of identity theft. *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

497 S.W.3d 601, 607 (Tex. App.—Dallas 2016, no pet.). In *Watson*, we concluded that "the Hardmans' own live pleading allege[d] facts demonstrating that Watson's alleged accusations against [the Hardmans] related to a matter of public concern—specifically, community well-being." *Id*. In *AOL, Inc. v. Malouf*, we held statements that a dentist had been charged with defrauding taxpayers out of tens of millions of dollars in a Medicaid scam related to a matter of public concern under the community well-being prong and other prongs of the statute. No. 05-13-01637-CV, 2015 WL 1535669, at \*2 (Tex. App.—Dallas Apr. 2, 2015, no pet.) (mem.op.). Thus,

statements regarding crime qualify as statements regarding a matter of interest to the community. *See id.*

Although Walker argues appellants were not "reporting a crime," it is undisputed that Diaz's statements to Detective Tinsley were statements made to a public servant in connection with a law enforcement investigation. Similar to *Watson*, Walker's own petition states that Diaz's statements to Detective Tinsley "were the cause of felony criminal charges being brought against [Walker] in Rockwall County and resulted in a negative rating and review being reported and posted online by the Better Business Bureau in Dallas."[7] Accordingly, we must conclude that the communications in question were made in connection with a matter of public concern—regarding a matter of interest to the community. Appellants have demonstrated that Walker's legal action is based on or is in response to their exercise of the right of free speech. CIV. PRAC. & REM. § 27.005(b).

---

[7] We note that Walker's indictment makes no mention of appellants. Instead, the Rockwall County, Texas indictment specifies that:

> [Walker] on or about the 5th day of May, 2018 and before the presentment of [the] indictment, in the County and State aforesaid, did then and there unlawfully appropriate, by acquiring or exercising control over, property, to-wit: money in the value of $2,500.00 or more but less than $30,000.00 from Donna Gail Blackmon, the owner thereof, without the affective consent of the owner, namely, by deception, to-wit: by sending invoices representing work had started or had been completed on the roof of the owner's residence when it had not, and with the intent to deprive the owner of the property[.]

## B. Whether Walker Established a Prima Facie Case for Each Essential Element of His Defamation Claim

The second step of our TCPA analysis requires us to determine whether Walker established "by clear and specific evidence a prima facie case for each essential element of the claim in question." CIV. PRAC. & REM. § 27.005(c). Prima facie evidence is the minimum amount of evidence necessary to support a rational inference that a factual allegation is true. *Lipsky*, 460 S.W.3d at 592. Although the TCPA does not define "clear and specific" evidence, these terms are given their ordinary meaning—that is, unambiguous, easily understood, and explicit. *See Texas State Bd. of Exam'rs of Marriage & Family Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 34-35 (Tex. 2017) (explaining that where statute does not define key term, we must apply "common, ordinary meaning unless a contrary meaning is apparent"). Accordingly, the plaintiff must do more than make general allegations that restate the elements of a cause of action—he must provide enough detail to show the factual basis for his claim. *Marble Ridge Capital LP v. Neiman Marcus Group, Inc.*, 611 S.W.3d 113, 122 (Tex. App.—Dallas 2020, pet. abated) (citing *Lipsky*, 460 S.W.3d at 590-91).

The elements of a defamation claim are as follows: "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Lipsky*, 460 S.W.3d at 593. We next address each of these elements.

i. *Whether Walker Established by Clear and Specific Evidence that Appellants Publicized False Statements of Fact to a Third Party*

The threshold requirement for a defamation claim is the publication of a false statement of fact to a third party. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). "'Publication' occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is 'capable of understanding their defamatory import and in such a way that the third person did so understand.' *Id.* (quoting *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.)). Furthermore, as this case involves a matter of public concern, the plaintiff has the burden of proving falsity of the published statements. *See Bentley v. Bunton*, 94 S.W.3d 561, 586 & n.62 (Tex. 2002). Thus, to meet these burdens, Walker must offer clear and specific evidence that the statements were published and fail the "substantial truth" test. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991) (libel suit against media defendant); *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (similar libel suit against media defendant). The record shows Diaz's statements to Detective Tinsley were oral statements she made to a third party. Walker therefore meets the publication element

for his defamation claim as to these oral statements. We next address whether the statements fail the "substantial truth" test.

Substantial truth is evaluated by looking at the gist of the publication. *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017).[8]

> This evaluation requires us to determine whether, in the mind of the average reader, the alleged defamatory statements were more damaging to Rogers' reputation than truthful statements would have been. If we conclude that the underlying facts as to the gist of the defamatory charges are undisputed, then we may disregard "any variances with respect to items of secondary importance," and decide, as a matter of law, that the articles are substantially true.

*Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467, 472 (Tex. App.—Dallas 1994, writ denied) (internal citation omitted).

Walker's first allegation of defamatory statements relates to Diaz's answers to Detective Tinsley's August 30, 2018 questions about whether Walker misrepresented the completion of his work. The record shows Diaz, on July 2, 2018, advised Walker (i) on the final price for the repair and (ii) that he could finish work. The record then shows that on July 13, 2018, Walker sent an email to Kevin Magee of QBE, which stated the following: ". . . we are forwarding the DW Group Construction Co. amended invoice in the amount of $23,639.53 . . . for damages to your insured[.] This July 13, 2018 email was accompanied by an invoice from Walker's company that (i) contained the signatures of Walker and Blackmon,

---

[8] The term "gist" means "the main point or part" or "essence." *Reedy v. Webb*, 113 S.W.3d 19, 24 (Tex. App.—Tyler 2002, pet. denied) (citing WEBSTER'S COLLEGIATE DICTIONARY 493 (10th ed. 1993).

(ii) was dated July 11, 2018 on three locations, and (iii) contained the following phrase "Insurance: 1. Invoice per DW Group Construction Company final estimate as attached." This "final estimate" invoice showed a cost amount of $23,639.53. On July 17, 2018, Diaz released the final depreciation payment, which brought the full payment from QBE to Blackmon to $23,639.53. She then closed the claim on July 18, 2018.

However, the record shows that on July 25, 2018, seven days after Diaz closed Blackmon's claim, Blackmon called QBE to complain Walker had not begun work. Walker suggests in his briefing that because Blackmon knew about the status of the repairs, Diaz "knew all along that the repairs had not started or been completed." However, there is no evidence in the record to suggest Diaz knew the status of the repairs from Blackmon at any time before she closed the claim on July 18, 2018. To the contrary, the record contains a transcript of a telephone conversation between Blackmon and Diaz on August 29, 2018, in which Blackmon informs Diaz that Walker "had taken [her] money and scammed y'all as well."[9] Thus, the record does not contain evidence that Diaz's statements to Detective Tinsley were untrue.

Walker's second allegation of a defamatory statement consists of Diaz's statement to Detective Tinsley that QBE had another insured who complained

---

[9] In that conversation, Diaz confirmed her understanding that Walker had completed the work, and Blackmon asked "why don't y'all check with the consumer? Why do you check with the contractor?"

–16–

Walker "walked away with some of her money[,] too." Apart from Walker's bare denial, the record contains no evidence this statement was untrue.[10]

Walker's third allegation of a defamatory statement consists of Diaz's statement to Detective Tinsley that directed Detective Tinsley to QBE's special investigations unit and Kevin Magee. There is no evidence in the record that this is a false statement. Walker does not contend this statement was untrue. Thus, we must conclude Walker failed to raise clear and specific evidence that the above-discussed allegations against appellants failed the "substantial truth" test.[11] Walker's affidavit further claims that several notes from QBE's call logs were defamatory. However, there is no evidence in the record that the call logs were published to any third party. Thus, we must conclude Walker has failed to establish by clear and specific evidence the first element of his defamation claim.

    ii.    *Whether Walker Established by Clear and Specific Evidence that Appellants' Statements Were Defamatory Against Walker*

"[T]he standard for construing defamatory meaning generally is whether the publication is 'reasonably capable' of defamatory meaning." *Dallas Morning News,*

---

[10] We note the record contains an April 4, 2020 affidavit from Walker in which he discusses this allegation involving "another Insured." However, Walker's affidavit contains no clear or specific evidence as to the falsity of the allegation that he "walked away with some of [that insured's] money, too." As in *Lipsky*, Walker's affidavit testimony on this allegation is conclusory and, therefore, is insufficient to satisfy the TCPA's requirement of "clear and specific evidence." *Lipsky*, 460 S.W.3d 592 ("Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA.").

[11] Walker's affidavit further claims that several notes from QBE's call logs were defamatory. However, there is no evidence in the record that the call logs were published to any third party.

–17–

*Inc. v. Tatum*, 554 S.W.3d 614, 629 (Tex. 2018). To determine whether the statement is reasonably capable of a defamatory meaning, the court must consider (1) the type of defamation alleged and (2) whether the statement was ambiguous. *See Tatum*, 554 S.W.3d at 631–32. Whether a statement is reasonably capable of a defamatory meaning is determined by the court as a matter of law using an objective standard. *Tatum*, 554 S.W.3d at 625.

Although Walker's petition and brief do not identify the type of defamation alleged, it is apparent from the record that he accused appellants of textual defamation.[12] There are two types of textual defamation: explicit defamation and defamation by implication. *Tatum*, 554 S.W.3d at 627. Explicit defamation occurs when the defamatory meaning of a statement arises from the face of the statement itself. *Tatum*, 554 S.W.3d at 626–27. Implicit defamation occurs when the defamatory meaning of a statement arises implicitly from the statement's text. *Tatum*, 554 S.W.3d at 627.

Here, Diaz's statements to Detective Tinsley that (i) Walker misrepresented the completion of his work and (ii) Walker "walked away" with another insured's money explicitly and unambiguously assert that Walker in some way misrepresented his work to obtain payment for services he allegedly did not render. Similarly, the

---

[12] Textual defamation occurs when a statement's defamatory meaning arises from the statement's words without reference to any extrinsic evidence—that is, the plaintiff can prove the defamatory meaning with the statement itself and no other evidence. *See Tatum*, 554 S.W.3d at 626.

notes from the QBE call log explicitly and unambiguously describe that Walker did the same. We must conclude Walker has established by clear and specific evidence the second element of his defamation claim as to these statements.

However, the statements from Diaz directing Tinsley to QBE's special investigation unit and Kevin Magee are not reasonably capable of defamatory meaning. These statements do not explicitly relate to Walker, and Walker has not established by clear and specific evidence how, if at all, these statements implicitly defame him.[13] We must conclude Walker has not established by clear and specific evidence the second element to his defamation claim as to these statements.

### iii. Whether Walker Established by Clear and Specific Evidence that Appellants' Acted with the Requisite Degree of Fault

"The status of the person allegedly defamed determines the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice." *Lipsky*, 460 S.W.3d at 593. The record reflects Walker was a private individual, not a public figure. However, a private individual must prove actual malice whenever the defendant has a qualified privilege. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Statements made to police and law enforcement relating to a crime are qualifiedly privileged. *See Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 610 (Tex. App.—San Antonio 2018,

---

[13] In all defamation-by-implication claims, the plaintiff must provide additional, affirmative evidence within the statement itself that the defendant intended the defamatory meaning. *Tatum*, 554 S.W.3d at 635.

–19–

pet. denied) ("[R]eporting a crime to the police is qualifiedly privileged.); *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 544 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("We conclude that [qualified privilege applies] with respect to Aaron's investigation of the missing merchandise and its report to the police. A qualified privilege also cloaks statements made to law enforcement.").

Here, Walker complains of communications appellants made to Detective Tinsley in connection with a law enforcement investigation. Therefore, a qualified privilege applies to appellants' communications, and Walker must prove appellants made their statements with actual malice. "[A] statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth." *Johnson*, 891 S.W.2d at 646. Reckless disregard is a subjective standard that focuses on the conduct and state of mind of the defendant during the editorial process and at the time of publication. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003); *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002).

Here, Walker first argues that his affidavit establishes evidence that appellants acted with actual malice against him. Specifically, Walker's affidavit describes evidence of "[going] over Ms. Diaz's head concerning errors" she made; complaints of Diaz's alleged unprofessionalism; and controversy over Diaz's release of the final depreciation payment. Among other characterizations, Walker asserts Diaz was "upset" with him and that she attempted to "protect herself from possibly losing her

–20–

job." Walker's affidavit asserts Diaz "acted with actual 'Malice' toward [him] to get even with [him] and to avoid looking bad to her superiors and [Blackmon]."

Walker's conclusions and speculations as to Diaz's state of mind are unsupported by the record and are not a "sufficient substitute for the clear and specific evidence required to establish a prima facie case." *Lipsky*, 460 S.W.3d at 592; *Van Der Linden v. Khan*, 535 S.W.3d 179, 193 (Tex. App.—Fort Worth 2017, pet. denied) ("We start with the fundamental premise that a witness's testimony regarding what another person was thinking is inadmissible speculation and should not be considered."). Furthermore, apart from Walker's speculative assertions about Diaz's state of mind, there is no evidence that Diaz was upset with Walker or trying to "get even" with him. There is no evidence that this circumstance made Diaz look bad to her superiors or caused her any other concern as related to her employment. As for the depreciation payment, the record shows Diaz submitted the depreciation payment to Blackmon based on her understanding that Walker submitted a final invoice—with which Magee agreed.

Thus, there is no competent evidence in the record that shows appellants made any communications with reckless disregard for the truth. As we have concluded above, the record does not show that appellants made communications with knowledge of their respective falsity. We must conclude Walker has not established by clear and specific evidence that appellants acted with actual malice against him— the third element of his defamation claim.

*iv.    Whether Walker Established Damages by Clear and Specific Evidence*

Walker pleaded damages in excess of $2,000,000 and exemplary damages in sum of at least $10,000,000. Walker pleaded damages in the form of actual damages, exemplary damages, costs of court, and pre and post-trial interest. Walker further pleaded damages including:

> loss of business opportunity, loss of reputation, future losses related thereto, physical pain and suffering from anxiety, high blood pressure, sleepless nights, upset stomach, nervousness, emotional distress, and mental pain and anguish resulting from embarrassment including personal humiliation, shame and disgrace.

In Texas defamation suits, damages for injury to reputation, personal humiliation, and mental anguish and suffering are considered general damages. *See Innovative Block v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020). Whether general damages must be proved or are presumed depends on the types of defamation, speech, parties, and degrees of fault involved in the suit. *See Tatum*, 554 S.W.3d at 626–27.

Walker asserts appellants' communications were defamatory per se,[14] and he consequently argues that he is entitled to presumption of general damages. *See Tatum*, S.W.3d at 637–38 (citing *Lipsky*, 460 S.W.3d at 596). However, as we have concluded above, (i) appellants' communications were a matter of public concern

---

[14] "When defamation is per se, the communication is actionable in and of itself without proof of actual damages." *Valley Builders Supply, Inc.*, 603 S.W.3d at 418. "A statement is defamatory per se when it falls within one of the categories that the common law considers so obviously harmful to reputation that the jury may presume the existence of general damages." *Id.*

and (ii) Walker failed to prove actual malice. Thus, Walker's claims of general damages may not be presumed. *Hancock v. Variyam*, 400 S.W.3d 59, 65–66 (Tex. 2013) ("[T]he First Amendment requires competent evidence to support an award of actual or compensatory damages when the speech is public or the level of fault is less than actual malice. . . . Thus, the Constitution only allows juries to presume the existence of general damages in defamation per se cases where: (1) the speech is not public, or (2) the plaintiff proves actual malice.").

Walker nevertheless asserts he proved his damages, referring us to his affidavit. Walker's affidavit lists, verbatim, the same exact damages as found in his pleading. Walker's affidavit does not substantiate his damages with other evidence, and the record contains no clear and specific evidence as to Walker's damages. Such general averments of damages do not satisfy the requirements of the TCPA. *See Lipsky*, 460 S.W.3d at 592. We must conclude Walker has not established his damages by clear and specific evidence. *See id.*; *Elizondo v. Krist,* 415 S.W.3d 259, 264 (Tex. 2013) ("Conclusory statement[s] ... [are] insufficient to create a question of fact to defeat summary judgment."); *City of San Antonio v. Pollock,* 284 S.W.3d 809, 816 (Tex. 2009) (holding conclusory, baseless testimony to be no evidence).

Because Walker has failed to establish any of the requisite elements, we must conclude Walker has failed to establish a prima facia case of defamation. Coupled with our conclusion that the TCPA applies to appellants' communications, we sustain appellants' first issue.

### C. Walker's Tortious Interference With Contract and Conspiracy Claims

Appellants ask us to address Walker's tortious interference with contract and conspiracy claims as a part of this pertinent TCPA motion—which was filed November 14, 2019, and heard February 17, 2020. Walker amended his petition to include the two additional claims on February 10, 2020—months after appellants filed their first TCPA motion. Nevertheless, appellants argue "Walker's conspiracy and tortious interference with contract claims are based on or relate to the same essential factual allegations as the original defamation claims."[15]

Before perfecting this appeal, appellants filed a second TCPA motion to dismiss on March 30, 2020, which included requests for dismissal of Walker's tortious interference with contract and conspiracy claims. The record shows appellants' second TCPA motion to dismiss has not been heard or otherwise adjudicated by the trial court. In *Walker v. Pegasus Eventing, LLC* we held:

> The TCPA requires a defendant seeking the statute's protections to move for dismissal and to obtain a hearing on the motion within certain clearly defined periods. *Braun v. Gordon*, No. 05-17-00176-CV, 2017 WL 4250235, at *3 (Tex. App.—Dallas Sept. 26, 2017, no pet.) (mem. op.). The failure to meet these requirements results in the defendant's forfeiting the statute's protections, and the case should continue as if the motion to dismiss were never filed. *Id.* Specifically, *if the trial court does not hold a hearing at all, then we lack jurisdiction over an appeal related to the motion. See In re Herbert*, No. 05-19-01126-CV, 2019

---

[15] "An amended pleading that does not add new parties or claims does not restart the deadline for filing a motion to dismiss under the TCPA." *Mancilla v. Taxfree Shopping, Ltd*, No. 05-18-00136-CV, 2018 WL 6850951, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.). "[A]n amended petition asserting claims based upon new factual allegations may reset a TCPA deadline as to the newly added substance." *Mancilla*, 2018 WL 6850951, at *3.

WL 4509222, at *1 (Tex. App.—Dallas Sept. 19, 2019, orig. proceeding) (mem. op.) ("[C]ourts of appeals lack jurisdiction over an appeal involving [a TCPA] motion if the trial court refuses to hold a timely hearing despite the movant's reasonable requests to the trial court for that hearing.").

No. 05-19-00252-CV, 2020 WL 3248476, at *5 (Tex. App.—Dallas June 16, 2020, pet. denied) (footnote omitted, emphasis added). Here, since the trial court has not heard appellants' second TCPA motion, we (i) decline to address and (ii) offer no opinion on Walker's claims of tortious interference with contract and conspiracy. *See Walker*, 2020 WL 3248476, at *5; TEX. R. APP. P. 33.1(a)(2) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the trial court . . . ruled on the request, objection, or motion, either expressly or implicitly; or refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.").

## D. CONCLUSION

Having sustained appellants' first issue, we reverse the judgment of the trial court, which overruled appellants' November 14, 2019 TCPA motion to dismiss by operation of law. We render judgment dismissing Walker's defamation claim pursuant to the TCPA, and we remand this case to the trial court for further

proceedings consistent with this opinion and section 27.009(a) of the Texas Civil

Practice and Remedies Code. CIV. PRAC. & REM. § 27.009(a).[16]


|  | /Bill Pedersen, III// |
| 200439f.p05 | BILL PEDERSEN, III |
|  | JUSTICE |

---

[16] Section 27.009(a) provides:

Except as provided by Subsection (c), if the court orders dismissal of a legal action under this chapter, the court: (1) shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action; and (2) may award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

CIV. PRAC. & REM. § 27.009(a)(1-2).



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

QBE AMERICAS, INC. AND
SONIA DIAZ, Appellants

No. 05-20-00439-CV    V.

DEYLAN WALKER, Appellee

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-14300.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED.** Walker's defamation claim against appellants is **DISMISSED**. This cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants QBE AMERICAS, INC. AND SONIA DIAZ recover their costs of this appeal from appellee DEYLAN WALKER.

Judgment entered this 12th day of May, 2021.